[S. F. No. 4556.  In Bank.—June 28, 1909.]

# HELEN YOUNGER, Respondent, v. HELEN M. MOORE et al., Defendants; HELEN M. MOORE, Appellant.

DEED AND DECLARATION OF TRUST AS SINGLE TRANSACTION—CONSTRUC-
TION.—A grant, bargain, and sale-deed of land, and a declaration
of trust executed four days thereafter by the parties thereto sub-
jecting said deed to the provisions of the trust agreement, should be
considered as parts of a single transaction and so construed.

ID.—TRUST-DEED TO SECURE INDEBTEDNESS—POWER TO SELL, MANAGE,
EXCHANGE, AND PARTITION—MORTGAGE.—A deed of trust of land
executed for the sole purpose of securing an indebtedness of the
grantor, with interest, expenses of protecting the property and
compensation of the trustee, and empowering the trustee to sell the
property in order to obtain money for the payment of the indebt-
edness, and purporting to empower the trustee to "manage" the
same, and to "exchange," or "partition" it, is not a mortgage, and
is valid as a trust-deed, under subdivision 1 of section 857 of the
Civil Code.

ID.—LIMITATION ON POWER OF MANAGEMENT.—The power to "manage"
the property conferred by such deed must be construed as intending
only such control of the property as is proper in the lawful execution
of the trust created as security for the indebtedness.

ID.—POWER TO EXCHANGE AND PARTITION.—Admitting that the convey-
ance in trust is invalid in so far as it purports to authorize the
trustee to "exchange" or "partition" the property, such invalidity
would not affect the valid provisions for the conversion of the trust
property so far as necessary into money wherewith to discharge the
indebtedness secured thereby, which was the main purpose of the
grantor.

ID.—AFTER-ACQUIRED TITLE INURES TO BENEFIT OF GRANTEE.—Where the
deed executed by the grantor contained the usual words of grant,
bargain, and sale, and described the land conveyed "as all that cer-
tain tract of land" (particularly describing it), without any reser-
vation, or any words in any way limiting the interest conveyed, or
tending to show an intent to make a quitclaim deed only, any interest
in the land afterwards acquired by the grantor inures to the benefit
of the grantee, and is held by him subject to the trust agreement.
This result follows, although at the time of the execution of the deed
and trust agreement, the grantor had only a certain undivided inter-
est in the land, and the trust agreement contained a recital of the
execution of the deed whereby she had conveyed all her right, title,
and interest in the property.

ID.—APPEAL FROM ORDER DENYING NEW TRIAL—PLEADINGS—FINDINGS.
—No question of the sufficiency of the pleadings, or of the findings

to support the judgment, is involved in or can be considered on an appeal from an order denying a new trial.

APPEAL from an order of the Superior Court of Santa Cruz County denying a new trial. M. T. Dooling, Judge presiding.

The facts are stated in the opinion of the court.

William T. Jeter, for Appellant.

Charles B. Younger, and Cushing, Grant & Cushing, for F. A. Hihn Company, Respondent.

ANGELLOTTI, J.—This is an appeal by defendant Helen M. Moore from an order denying her motion for a new trial, after the making of an interlocutory decree in an action for partition of certain real property in Santa Cruz County. There is no appeal from the judgment. The only controversy on this appeal as shown by the brief of counsel is between defendant Helen M. Moore and defendant F. A. Hihn Company, a corporation, as to the ownership of an undivided seven fifteenths of the Moore Ranch, exclusive of that portion thereof set apart as a homestead April 26, 1881, to Helen M. Moore and her minor children, by the superior court of Santa Cruz County, in the matter of the estate of William H. Moore, her deceased husband.

By its answer, defendant F. A. Hihn Company alleged that it owns in fee simple absolute said undivided seven fifteenths of said land, having acquired the same by deed dated July 19, 1895.

By her answer defendant Helen M. Moore alleged that she is the owner in fee simple absolute of the same undivided seven fifteenths of said land. She further alleged that she acquired five fifteenths under the decree of final distribution made July 27, 1891, in the matter of the estate of her deceased husband, who died intestate October 30, 1871, and two fifteenths under the decree of final distribution made March 1, 1898, in the matter of the estate of her deceased son, William H. Moore, who died intestate May 5, 1896, the owner thereof, all of which is found by the trial court and is here conceded. She further averred that her deed of July 19,

1895, to the F. A. Hihn Company was for only an undivided five fifteenths, and that the same was executed "as security for the payment of certain promissory notes then and there executed by her, and also as security" for future advances and interest, and "though absolute in form was and is in fact a mortgage."

The trial court found that on July 19, 1895, said Helen M. Moore executed to the F. A. Hihn Company a deed of grant, bargain, and sale, purporting to convey all of the "Moore Ranch," that this deed "was intended to be and was a trust-deed, and that on July 23, 1895, there was executed by Helen M. Moore, as party of the first part, by F. A. Hihn Company, as party of the second part, and by Charles B. Younger, as party of the third part, a certain declaration of trust relative thereto," subjecting said deed to the provisions of said agreement, which is set forth in the findings. This agreement contained recitals to the effect that on July 19, 1895, Helen M. Moore conveyed to the F. A. Hihn Company "all her right, title, interest, estate and claim" in and to the Moore Ranch and other property, that all such interest had been sold at foreclosure sale on March 30, 1895, and said Charles B. Younger had on July 23, 1895, furnished her with the sum of $9538.16 to be used for redeeming the same from said sale, that in addition thereto she was indebted to Younger in the sum of $4933, and that she did on July 23, 1895, execute to Younger as evidence of her indebtedness to him, her promissory note for $14,471, payable one year after date, bearing interest at the rate of eight per cent per annum. It then provided that the F. A. Hihn Company "will manage the premises conveyed to it as aforesaid and will sell, exchange, partition, dispose of and convey" the premises, "either as a whole, or in such subdivisions and at such time or times as it may deem proper," applying the proceeds from "the rents, sales or other disposition of said premises": 1. To payment of taxes, insurance, and other necessary expenses in the management and protection of the property, including necessary litigation; 2. To payment to the F. A. Hihn Company of a commission of five per cent on all proceeds; 3. To payment to the F. A. Hihn Company of interest on all sums expended by it under the contract; 4. To payment to the F. A. Hihn Company of all money expended by it under the contract;

CLV Cal.—49

5. To payment to Younger of $14,471, with interest; and 6. The surplus, if any, to be paid to Helen M. Moore, her heirs or assigns. It was further provided that when Younger and the F. A. Hihn Company had been fully paid all sums due, with interest, said F. A. Hihn Company "shall, on demand by said party of the first part, reconvey to said party of the first part all its right, title and interest, estate and claim in and to the premises conveyed to it as aforesaid by said party of the first part, or such part thereof as shall then remain undisposed of by it." The court further found that the title to the two fifths acquired by Helen M. Moore as of May 15, 1896, from her deceased son, passed by operation of law to the F. A. Hihn Company by virtue of her deed of July 19, 1895, subject to the agreement last specified.

It was further found in terms that the F. A. Hihn Company was the owner of this seven fifteenths of the Moore Ranch, excepting that portion thereof constituting the "Moore homestead," "subject, however, to the agreement executed July 23rd, 1895," hereinbefore described, and that the other eight fifteenths were owned, two fifteenths by plaintiff and Charles D. Younger, two fifteenths by Charles Moore, two fifteenths by Stella Moore, and two fifteenths by Alice Hoffmann. The interlocutory judgment was in accord with the terms of this finding, it further decreeing that Helen M. Moore had no interest in any of said property other than such as she had under said agreement.

Appellant's statement on motion for a new trial contains the evidence and admissions of the parties showing all the facts as to the acquirement by Helen M. Moore of the seven fifteenths from her husband and her son, being the same facts in regard thereto stated in the findings of the trial court. It further contains the deed of July 19, 1895, from Helen M. Moore to the F. A. Hihn Company, and the agreement of July 23, 1895, hereinbefore described. This, it is stipulated in the statement, constituted all of the evidence given on the trial.

It is conceded here that the findings of the trial court in regard to the ownership of this property were sustained by the evidence, if the instruments executed by Mrs. Moore, the F. A. Hihn Company and Younger are to be regarded as a

deed of trust to secure the indebtedness of Mrs. Moore de-
scribed therein, as distinguished from a mere mortgage, and
if the undivided two fifteenths acquired by Mrs. Moore from
her deceased son subsequent to the execution thereof passed
by operation of law to the grantee for the purposes of the
trust.

The deed of July 19, 1895, and the trust agreement of July
23, 1895, must be considered as parts of a single transaction,
and so construed.  There is no escape from the conclusion that
the deed of Helen M. Moore to the F. A. Hihn Company "was
intended to be . . . a trust-deed," as found by the trial court,
and was not intended as a mortgage.  It is urged that it was
not a valid trust-deed, inasmuch as it was for some purposes
not authorized by section 857 of the Civil Code, defining the
purposes for which express trusts in relation to real property
may be created.  If we were compelled to hold that it was
not a valid deed of trust, doubtless the rights of the parties
could be preserved by holding the instruments to constitute
an equitable mortgage or lien.  (*Earle* v. *Sunnyside Land Co.,*
150 Cal. 214, 227, [88 Pac. 920].)  But we see no difficulty
in sustaining it as a valid trust-deed.  Primarily, the trust
expressed was solely by way of security for the indebtedness
of Mrs. Moore, with interest, expenses of protecting the prop-
erty, and compensation of the trustee.  The validity of trust-
deeds given as security for loans is established in this state
by a long line of decisions.  As was said in *Sacramento Bank*
v. *Alcorn,* 121 Cal. 379, 385, [53 Pac. 813], these decisions
"practically hold that they are authorized by section 857 of
the Civil Code, . . . which rulings, long acquiesced in, have
become a rule of property. . . . "  Subdivision 1 of section
857 of the Civil Code authorizes a trust "to sell real property,
and apply or dispose of the proceeds in accordance with the
instrument creating the trust."  Appellant's claim is that the
instrument before us goes beyond the scope of the ordinary
trust-deed, in that besides empowering the trustee to sell the
property in order to obtain money for the payment of the
indebtedness, etc., it purports to empower the trustee to "man-
age" the same, and to "exchange" or "partition" it.  So far
as the word "manage" is concerned, there can be no difficulty.
The word must be construed as intending only such control
of the property as is proper in the lawful execution of a trust

created as security for an indebtedness. It may be that the conveyance in trust is invalid in so far as it purports to authorize the trustee to "exchange" or "partition" the property, but if this be so it seems apparent to us that the invalidity should not be held to affect the valid provisions. The main and ultimate purpose of the trust created by these instruments was to convert the trust property by sale so far as necessary into money wherewith to discharge the indebtedness secured thereby, and the power to exchange or partition was merely incidental, and not at all essential thereto. If the trustee could not be legally authorized to exchange or partition the property, the provisions in that behalf can be disregarded without interfering with and changing the main scheme of the grantor. (See *Sacramento Bank* v. *Montgomery,* 146 Cal. 745, [81 Pac. 138].) In other words, there was no such inseparable scheme, that the attempted power to exchange or partition cannot be disregarded without affecting or interfering with the main purpose of the parties. If the trustee should attempt to exchange or partition the trust property, the question of the validity of these provisions would become material, but we do not consider it material here.

Upon the point that the instrument before us must be considered a valid trust-deed, rather than a mortgage, the case of *More* v. *Calkins,* 85 Cal. 177, 184, [24 Pac. 729]; and 95 Cal. 435, 437, [29 Am. St. Rep. 128, 30 Pac. 583], is squarely in point.

Upon the question whether the undivided two fifteenths owned by her son at the time of the execution of the deed and subsequently acquired by Mrs. Moore by inheritance, passed by operation of law to the grantee for the purposes of the trust, the district court of appeal said in the decision in this case:—

"It is not seriously contended that the deed of grant, bargain and sale made by appellant on July 19, 1895, describing the 'Moore Ranch' would not, in the absence of any other agreement to the contrary, have conveyed the after-acquired title to the grantee therein named. It is fundamental that where a grantor, by proper instrument, purports to grant property in fee simple, and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee or his successors. The effect of such deed as

matter of law is the same as if it were written upon the face
that the grantor conveyed all the estate which he then pos-
sessed or which he might at any time thereafter acquire.
(Civ. Code, sec. 1106; *Clark* v. *Baker*, 14 Cal. 612, [76 Am.
Dec. 449]; *Defrieze* v. *Quint*, 94 Cal. 653, [28 Am. St. Rep.
151, 30 Pac. 1]; *Merrill* v. *Clark*, 103 Cal. 367, [37 Pac.
238].) Appellant contends that the trust agreement made
and executed four days after the execution of the deed should
be read in connection with the deed, and as a contemporaneous
agreement relating to the same subject-matter. We are in-
clined to agree with the contention. It is further contended,
however, that when thus read, the agreement shows that the
appellant intended to and did convey only her undivided one-
third interest in and to the Moore Ranch which she then
owned, and that the agreement so limited and modified the
granting clause in the deed as to clearly show that the deed
was only a quitclaim deed of the interest and title then owned
by the grantor. This contention cannot be supported by a
logical analysis of the deed and agreement when read together.
A deed must be interpreted in favor of the grantee except in
case of a reservation in any grant, or a grant by a public
officer or public body. Now the deed contains the usual words
of grant, bargain and sale of 'all that certain tract of land
lying and being situate in said county of Santa Cruz in said
state of California known as and called the Moore Ranch, and
further described as bounded on the northerly by land of
Dwight Younglove, by land of Henry Cowell, and by land
formerly of John W. Chance but now of the bank of Santa
Cruz County, a private corporation; on the easterly by said
last-named land and by the land of Dwight Younglove and
by land formerly of Richard H. Hall, but now of Margaret
Hall; on the southerly by the Pacific Ocean; and on the
westerly by land of Delos D. Wilder, by land of Dwight
Younglove and by Meder Creek, containing an area of about
eight hundred and sixty acres of land.' In the deed are no
words of reservation, nor any words in any way limiting the
interest conveyed, or tending to show the intent to make a
quitclaim deed only. The agreement commences by a prelim-
inary recital as follows: 'That whereas said party of the first
part did on the 19th day of July, 1895, convey to said party
of the second part, all her right, title, interest, estate and

claim in and to the Pacific Ocean House property; in and to the Moore Ranch situated in the county of Santa Cruz in the State of California.' The agreement further provided that when the party of the third part 'shall have been fully paid in United States gold coin said sum of $14,471, with interest thereon in like gold coin, at the rate of eight per cent per annum compounding quarterly, said party of the second part shall on demand by said party of the first part reconvey to said party of the first part all its right, title, and interest, estate and claim in and to the premises conveyed to it as aforesaid by said party of the first part, or such part thereof as shall then remain undisposed of by it.' The recital in the agreement as to the deed of July 19th was merely for the purpose of identification. The statement that whereas the appellant had theretofore done a certain thing, that is, made and executed the deed, was merely for the purpose of identifying the deed. The deed shows what was in fact done; and it would require a very plain and unambiguous statement in such an agreement to show that as a matter of fact the appellant intended to do a different thing from what it appeared by the written deed she did do. It is stated that on a certain day the appellant had conveyed all her right, title, estate and claim in and to the Moore Ranch, and so she had. She had conveyed all the title, estate and interest she then had, and she, as matter of law, conveyed the title she subsequently acquired. In any ordinary grant, bargain and sale-deed the grantor conveys all the right, title, estate and claim he has in and to the property. The agreement does not show that the granting clause in the deed was in any way limited or changed by the agreement, nor that it was intended that it should be. In fact, we may presume that the appellant was honest; that she intended to secure the indebtedness due Younger. She had no thought of reserving anything or conveying anything except as security. She had only to pay her indebtedness and the property would be conveyed back to her. She has now only to pay such indebtedness and it will be reconveyed to her. The after-acquired title passed by her deed, and it will again vest in her by proper deed upon her indebtedness being paid. To this she cannot object unless she desires to avoid the payment of her indebtedness."

We are satisfied that this is in all respects correct, and adopt the same as our views on the question.

The claim that the F. A. Hihn Company must be deemed to have waived its rights to *any lien* by reason of failure to set up in its answer the original amount due and the amount remaining due, with a statement as to the nature and extent of security, was not available to appellant on motion for new trial or on appeal from an order denying her motion, even if we assume that there is any foundation for such a claim. As we have said, there is no appeal from the judgment. No question of the sufficiency of the pleadings, or of the findings to support the judgment, is involved or can be considered on an appeal from an order denying a new trial (*Great Western etc. Co.* v. *Chambers,* 153 Cal. 307, 310, [95 Pac. 151], and cases there cited), and the point made by appellant in this regard is not otherwise presented by the record before us. Nor is there anything in the point that the trial court has failed to make any finding as to the amount of the indebtedness, etc. There was no issue made by the pleadings on this matter, and the court did find squarely on every material issue made.

As was substantially said by the district court of appeal, the rights of Mrs. Moore are fully protected by the findings and judgment to the effect that the ownership of the F. A. Hihn Company is subject "to the said agreement executed July 23rd, 1895."

The order denying the motion for a new trial is affirmed.

Shaw, J., Sloss, J., Melvin, J., Lorigan, J., and Henshaw, J., concurred.