[Civ. No. 2859.  First Appellate District, Division One.—July 21, 1919.]

## W. S. WITHERS, Respondent, v. ROBERT E. BOUSFIELD et al., Appellants.

[1] TRUSTS—INDEPENDENT CONTRACT OF GUARANTY—ENFORCEMENT OF —VALIDITY OF TRUST NOT SUBJECT TO ATTACK.—Where strangers to a trust created to secure payment of the purchase price of a certain tract of land enter into an independent contract of guaranty of such purchase price, they cannot, in an action to enforce such guaranty, attack the validity of the trust to which they are not parties, but become liable on default of the purchaser to the extent of their contract.

[2] ID. — SECURITY FOR PAYMENT OF DEBT — POWER TO CONVEY SEPARABLE.—Where the main and ultimate purpose of a trust is to

---

1. For monographic note on guaranty, note, 105 Am. St. Rep. 502.

convert the trust property by sale, so far as necessary, into money wherewith to discharge the indebtedness secured thereby, the power to convey on completion of the trust, the occasion for which might never arise, is not essential thereto; and, being separable, if the trustees cannot legally be authorized to convey the property as therein directed, such power to convey can be disregarded without changing the main purpose of the parties.

[3] ID.—TRUST INTENDED AS SECURITY FOR INDEBTEDNESS—RESULTANT TRUST INVALID—EQUITABLE MORTGAGE.—Where, primarily, the trust expressed is intended solely by way of security for the indebtedness of the purchaser of the property, with interest, expenses of protecting the property, and compensation of the trustees, and the resultant trust is invalid, as being for some purpose not authorized by section 857 of the Civil Code, the rights of the parties can be preserved by holding the instruments to constitute an equitable mortgage, with power of sale as part of the security and an incident or appurtenance of the mortgage lien.

[4] ID. — CREATION OF ACTIVE TRUST. — Where the agreement between the parties declares that it is intended to secure, and shall secure, the payment by the purchaser to the seller of his selling price of the property, with interest, and all other moneys which may become due or payable under the contract, and the trustees are given various active duties to perform in the execution of the trust, the trust created is not a passive trust.

[5] ID.—SUSPENSION OF POWER OF ALIENATION—RIGHT OF PURCHASER TO CONVEY OR SECURE CONVEYANCE.—Where, under a trust created to secure the payment of the purchase price of certain property, the purchaser can at any time, by paying the indebtedness to the vendor, receive a reconveyance of the property, or, by uniting with the trustees and its vendor, execute a conveyance to its vendee, the power of alienation is not suspended beyond the period of lives in being.

[6] ID.—AMENDMENT OF CODE AUTHORIZING TRUSTS TO CONVEY—SUBSEQUENT RE-EXECUTION OF INVALID AGREEMENT.—Where an agreement creating a trust to convey was entered into prior to the amendment of section 857 of the Civil Code in 1913 to authorize such trusts in real property, but subsequent to such amendment the parties enter into a new contract re-executing the original transaction, the latter contract is valid and enforceable.

[7] ID. — GUARANTY — ENFORCEMENT — DEMAND. — A guaranty is a promise to answer for the debt of another person, and it may be

4. What constitutes a directory or an active trust, note, 11 L. R. A. (N. S.) 331.

7. Necessity of demand for payment on maker of promise to pay debt or answer for default of another, note, 21 Ann. Cas. 545.

enforced, upon default of the principal, without any previous demand or notice.

[8] ID.—LIABILITY OF INDORSER OR GUARANTOR—ENFORCEMENT OF LIABILITY OF PRINCIPAL DEBTOR.—Regardless of the necessity for exhausting the security given before resorting to the personal liability of the maker of a note, an indorser, or guarantor, may be sued upon his personal liability before, and without, such action having been taken.

[9] ID.—ACTION ON CONTRACT OF GUARANTY—ATTORNEY'S FEES.—In this suit brought upon a contract guaranteeing the payment of a certain promissory note executed as evidence of and for the purchase price of a given tract of land, it was proper for the court to allow the attorney fee included in the judgment.

APPEAL from a judgment of the Superior Court of Alameda County. W. M. Conley, Judge. Affirmed.

The facts are stated in the opinion of the court.

Byrne & Lamson for Appellants.

Robert B. Gaylord for Respondent.

WASTE, P. J.—Plaintiff brought this suit upon a contract guaranteeing the payment of a certain promissory note for one hundred and fifty thousand dollars, executed February 21, 1913, by Brook-Wood Acres, Inc., payable on demand to the plaintiff or order. Judgment was entered in favor of plaintiff, and defendants Robert S. Bousfield and Jennie E. Bousfield alone appeal. The corporation maker of the note was not made a party.

On the twenty-first day of February, 1913, plaintiff and the Brook-Wood Acres, Inc., a corporation, entered into a contract whereby plaintiff sold and the corporation bought that certain real property located in the county of Contra Costa, known as Brook-Wood Acres, the purchase price being the sum of one hundred and fifty thousand dollars, together with interest thereon at the rate of six per cent per annum, from October 31, 1913, until paid. Concurrently with the execution of the contract, and as a part of the transaction, Withers and his wife executed, and delivered to L. G. Burpee and E. N. Walter, as joint tenants, and not as tenants in common, and to the survivors of them, their heirs and assigns, a grant, bargain, and sale deed of the property.

Burpee and Walters, in writing attached to the agreement of sale, accepted the conveyance of the premises under the deed, so executed, and consented to hold the title under such deed, and accepted such title under, and subject to, and pursuant to the terms of the entire agreement, it being the purpose of the parties that Burpee and Walter should, upon demand of the corporation, execute contracts for the sale of, or sell for cash, various portions of the Brook-Wood Acres tract at the prices, and upon the terms in the contract of sale specified.

Under the terms of the agreement, eighty per cent of the selling price of the various parcels of land, as sold, and all moneys otherwise paid to Burpee and Walter under the contract, were by them to be forthwith deposited in bank to the credit of plaintiff, the vendor of the whole tract under the contract of sale, and all such moneys were payable to him upon demand, excepting that Burpee and Walter could retain from the final payment, made by any purchaser, sufficient money to release the parcel purchased from the lien of two mortgages covering the entire tract, and which were provided for in the agreement. The remaining twenty per cent of the purchase price belonged to the Brook-Wood Acres, Inc., the buyer of the whole tract under the contract of sale.

By its terms the agreement declared that it was intended to, and did, secure the payment by the corporation to plaintiff of the selling price of Brook-Wood Acres, with interest, and all moneys which might be or become payable to him under the agreement, including any advances made by him in connection with the improvement or sale of the property, with interest thereon, and was also intended to secure the payment to Burpee and Walter of their charges and expenses, and all moneys, with interest thereon, advanced by them for the payment of expenses under the agreement, all of which expenses and charges were to be paid by the corporation.

After providing with particularity the conditions under which the corporation should be deemed in default under the agreement, such as failure to sell portions of the tract at selling prices aggregating certain specified sums, and amounting to a certain designated number of acres, by dates specified, and failure to pay to Burpee and Walter, either

through payments by purchasers under contracts of sale, or by direct payments made by the corporation, the agreement recites the giving, by the corporation to plaintiff, and its deposit with Burpee and Walter, of a certain promissory note, for the sum of one hundred and fifty thousand dollars, representing the purchase price to be paid for the tract of land, the payment of which note, the agreement further recites, "has been guaranteed jointly and severally by Robert E. Bousfield, Jennie P. Bousfield, I. M. Ver Mehr, Irene Lee Ver Mehr, W. G. Dodge, Leonie M. Dodge, F. C. Mills and Mabel Corse Mills, but which guaranty is conditioned that the liability of said guarantors under said guaranty or any of them, respectively, shall not exceed the sum of twenty-five thousand dollars ($25,000.00); it being the purpose of said guaranty that not more than $25,000.00 shall be collected by said first party (plaintiff) under the same."

Concurrently, also, with the execution of the agreement of sale, the Brook-Wood Acres, Inc., executed to plaintiff, and deposited with Burpee and Walter, its promissory note for the principal sum of one hundred and fifty thousand dollars, representing the purchase price to be paid Withers for the land. The note contained the following paragraph:

"Payment of this note is secured by a certain agreement of even date herewith entered into between Brook-Wood Acres, Inc., and with W. S. Withers, relating to the sale by W. S. Withers to Brook-Wood Acres, Inc. of certain real property of W. S. Withers in Contra Costa County, California, known as Brook-Wood Acres. The personal liability of Brook-Wood Acres, Inc., under this note aside from the security above mentioned, or after realizing upon such security, shall not exceed and is hereby limited to the sum of twenty-five thousand dollars ($25,000)."

The note was executed for the corporation by its president and secretary, and the seal of the corporation attached. It was signed by each of the defendants, who each in turn acknowledged and signed, before a notary public, a joint and several guaranty of payment of the note, waiving presentation, demand, notice of nonpayment, and protest. The liability of the guarantors was, by the terms of the instrument, limited to the sum of twenty-five thousand dollars,

In the event of any default upon the part of the corporation, so the agreement provides, but apparently not before,

Burpee and Walter are to deliver the note to plaintiff on demand, after indorsing, as payments thereon, all moneys received by them for the account of plaintiff, on the purchase price of Brook-Wood Acres, including any payments on account of interest, and certain other credits which are specified. At any time on or after the delivery of the note to plaintiff, or in the event of any default upon the part of the corporation in the payment of the note according to its terms, upon demand of plaintiff Burpee and Walter are by the agreement required to sell all portions of Brook-Wood Acres not theretofore conveyed by them, or such portions as in their discretion they may find it necessary, to make the payments thereafter provided in the agreement, and to make the sale in the manner therein fully and with particularity described. Suffice it to say that the procedure for making these sales is similar to, if not exactly like, that provided in the various forms of trust deeds so universally used and so long upheld by the courts of last resort of this and other states, as being a legal method for the sale of property conveyed to trustees as security for the payment of an existing indebtedness. (*Sacramento Bank* v. *Alcorn,* 121 Cal. 379, [53 Pac. 813]; *Balfour-Guthrie Co.* v. *Woodworth,* 124 Cal. 169–174, [56 Pac. 891]; *Younger* v. *Moore,* 155 Cal. 767–771, [103 Pac. 221].)

The grant, bargain, and sale deed of Brook-Wood Acres, executed by plaintiff and wife to Burpee and Walter, and the tri-party agreement, executed by plaintiff as first party, the corporation, Brook-Wood Acres, Inc., the second party, and Burpee and Walter as the third parties, were intended to be effective, and must be considered and regarded, as parts of one contract. (*Younger* v. *Moore, supra; San Diego Construction Co.* v. *Mannix,* 175 Cal. 548, [166 Pac. 325].) So construed, the transaction between the parties loses its complexity and amounts to nothing more nor less than the execution by the corporation, to plaintiff, of an ordinary deed of trust, to secure the payment of the note for one hundred and fifty thousand dollars, given as the purchase price of Brook-Wood Acres, the payment of the note being further secured to the extent of their limited liability, by the contract of guaranty executed by the guarantors, who are the defendants in this action. While Burpee and

Walter are not referred to in the transaction as trustees, they were in fact such.

[1] Because the trust agreement provides that upon payment to plaintiff of the entire selling price, with interest, and all other indebtedness of the maker of the note, connected with the sale of the tract—in short, upon full performance of the terms of the agreement—the trustees shall convey to Brook-Wood Acres, Inc., all unsold portions of Brook-Wood Acres, and all portions sold but for which deeds have not issued, and, likewise, were, in the event of a failure of title at the inception of the deal, to reconvey the property to plaintiff, the appellants contend that the trust is void under sections 847 and 857 of the Civil Code. They rely upon *Estate of Fair*, 132 Cal. 525, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000]; Id., 136 Cal. 79, [68 Pac. 306], as authority to the effect that a trust to convey is void, and that the statute concerning trusts was a legislative pronouncement of the public policy of the state. Invoking the rule that courts will not directly enforce any obligation arising out of a contract illegal by reason of being against public policy, by carrying it into effect, or indirectly by awarding damages or compensation for a breach of it, appellants first seek to avoid the liability of their contract of guaranty by an assertion of the infirmity of the trust. We fail to see any right resting in the appellants to attack the trust, if any of the alleged weaknesses therein exist. The guarantors became liable, on default of the corporation to pay its note, to the extent of their independent contract of guaranty. They were not parties to the trust in any manner. (*Kinsel* v. *Ballou*, 151 Cal. 754, 761, [91 Pac. 620].) They had no interest in the real property involved in, or in the outcome of, that transaction, other than to expect that whatever sums were realized from the sales of the property, either to purchasers or at trustees' sales, on default made by the maker of the note, would be applied in reduction of the amount due on the note.

[2] Assuming, however, but not deciding under the facts of this particular case, that the conveyance in trust is invalid, in so far as it purports to authorize the trustees to convey the property to the corporation, on fulfillment of the terms of the contract of sale, the invalidity should not be held to affect the valid provisions of the trust. The

main and ultimate purpose of the trust created by these instruments was to convert the trust property by sale, so far as necessary, into money wherewith to discharge the indebtedness secured thereby. (*Younger* v. *Moore,* 155 Cal. 767, [103 Pac. 221].) The power to convey on completion of the trust, the occasion for which might never, and in the present case did not, arise, was not essential thereto. If the trustees could not be legally authorized to convey the property to the corporation, the provisions in that behalf can be disregarded without interfering with, and changing the main scheme of, plaintiff and Brook-Wood Acres, Inc. (*Sacramento Bank* v. *Montgomery,* 146 Cal. 745, [81 Pac. 138].) In other words, as was said in that case, we see no such inseparable scheme, that the said power to convey cannot be disregarded without affecting or interfering with the main purpose of the parties. If the trustees were attempting to so convey the property, the question of the validity of such provision would become material if made an issue by parties properly interested in the subject matter, but we do not consider it material here. No attempt to convey was ever made, for, as will later appear, the property was sold by a trustee, substituted and acting under the terms of the trust agreement. (*Younger* v. *Moore, supra.*)

[3] For another reason appellants' attack on the transaction resulting in the trust should not be allowed to prevail. As before pointed out, the deed of February 21, 1913, from plaintiff and wife to Burpee and Walter, and the trust agreement of the same date between the same parties, and accepted by Burpee and Walter, must be considered as parts of a single transaction, and so construed. Primarily, the trust expressed was intended solely by way of security for the indebtedness of Brook-Wood Acres, Inc., with interest, expenses of protecting the property, and compensation of the trustees. If, as is urged, the resulting trust was invalid, as being for some purpose not authorized by section 857 of the Civil Code, defining the purposes for which express trusts in relation to real property may be created, and we were thereby compelled to hold it was not a valid deed of trust, the rights of the parties could be preserved by holding the instruments to constitute an equitable mortgage (*Younger* v. *Moore, supra*), with power of

sale as part of the security and an incident or appurtenance of the mortgage lien. (*Faxon* v. *All Persons,* 166 Cal. 707, 716, [L. R. A. 1916B, 1209, 137 Pac. 919].) "No policy of the law is violated by treating this instrument as creating a lien in the nature of a mortgage, if it cannot be upheld as a trust deed." (*Earle* v. *Sunnyside Land Co.,* 150 Cal. 214, 228, [88 Pac. 920, 925].)

[4] Appellants urge a further objection that the trust in the present case is but a dry and passive trust. They are mistaken. The agreement declares that it is intended to secure, and shall secure, the payment by the purchaser to the seller of his selling price of the property, with interest, and all other moneys which may become due or payable under the contract. The trustees are given various active duties to perform in the execution of the trust. These are: Upon failure of title of Brook-Wood Acres to reconvey the premises to plaintiff; upon demand of the corporation (provided it was not in default) to enter into contracts for the sale of, or sell for cash, various portions of the tract at the prices, and upon the terms in the contract specified; to receive the selling price therefor and apply the same on the purchase price of the entire tract; to approve the form of sales contracts agreed to by the other parties to the agreement; upon performance by any purchaser of his contract to convey to him the subdivision so purchased by him; to execute upon request of Brook-Wood Acres, Inc., such maps for recordation as might be from time to time approved by the other parties to the contract; in the event of any default by Brook-Wood Acres, Inc., to deliver the note of the corporation to Withers, after having indorsed as payments thereon all moneys received by them on the purchase price of the tract; at any time after delivery of the note, or any default of the corporation, upon demand of Withers to sell all unsold portions of the tract, at public auction, in the manner set forth in the agreement, and apply the proceeds of such sale, as directed therein; to assign to Brook-Wood Acres, Inc., any unsold outstanding contracts of sale upon payment to Withers, or themselves, of all moneys due; and upon payment of all the purchase price of the tract, and all moneys due under the agreement, to convey the remaining portions of Brook-Wood Acres to the corporation.

[5] Another contention of the appellants is that the trust, if otherwise valid, provided for a suspension of the absolute power of alienation beyond the period of lives in being. (Civ. Code, sec. 715.) "The power of alienation is not suspended when all the parties in interest, including the trustee and the beneficiary, can join in a conveyance and transfer a legal title. In the present case there was no suspension of the power of alienation, since" Brook-Wood Acres, Inc., "could at any time, by paying the indebtedness to plaintiff receive a reconveyance of the property, or, by uniting with the trustees and" plaintiff, execute a conveyance to a purchaser. (*Balfour, Guthrie Co.* v. *Woodworth*, 124 Cal. 169, [56 Pac. 891]; *Blakeman* v. *Miller*, 136 Cal. 138, 141, [89 Am. St. Rep. 120, 68 Pac. 587]; *Toland* v. *Toland*, 123 Cal. 140, 141, 142, [55 Pac. 681].)

[6] Respondent makes a timely suggestion in opposition to the right of appellants to assert the alleged invalidity of the trust. Section 857 of the Civil Code was amended at the session of the legislature in 1913 (Stats. 1913, p. 438), by including, among authorized trusts in real property, a trust to convey. Long after this amendment became effective, to wit, on December 15, 1914, in connection with certain extensions of time and other modifications of the contract, plaintiff and Brook-Wood Acres, Inc., executed a document in which they re-executed the original contract of February 21, 1913, as modified in the documents of later date, and each respectively agreed to perform the provisions of the original instrument. This agreement, after reciting the due execution of the original contract of February 21, 1913, the modification thereof under dates of July 15, 1913, and December 30, 1913, and the taking of contracts, under the provisions of the main contract for the purchase of various portions of Brook-Wood Acres, contains the following clause: "Now, therefore, this agreement, Witnesseth: That the said main contract and the terms and provisions thereof shall be and are hereby modified as hereinafter set forth, but not otherwise, and each party hereto upon his part agrees to perform the terms and provisions of this agreement and of said main contract and modifying agreements as modified by this agreement, and in that behalf, it is hereby by the parties

hereto agreed as follows, to wit'': then follows the modifications referred to, which, among others, constitute an extension of time of the making of various payments and which constitute a change in regard to acreage required to be sold to subdivision purchasers. The agreement, in addition to many apt references to the ''main contract,'' contains this clause: ''except as herein expressly stipulated all of the provisions of said main contract and said modifying agreements shall stand and that any and all terms and provisions thereof not in conflict with the terms of this agreement shall continue in force; to the end that the said main contract and modifying agreements shall continue in force as written, except as expressly modified by the terms of this agreement, and that all and singular the terms and provisions of said main contract shall apply and continue in force as if the modifying terms herein set forth had been originally contained in said main contract and modifying agreements.'' At the same time, and as a part of the same transaction, six of the guarantors, including the present appellants, signed a waiver of the twenty-five thousand dollar limitation upon their liability as guarantors, and jointly and severally guaranteed full payment of the note for one hundred and fifty thousand dollars. Whether the original trust agreement was valid or invalid by reason of the prohibition of the statute, the later contract re-executing the original transaction was valid and enforceable (*Burleson* v. *Burleson*, 11 Tex. 2), and the appellants guaranteed the payment of the note which it provided for.

After the making of the contract of sale, on July 15, 1913, the Brook-Wood Acres, Inc., being in default in the aggregate amount of its sales, as required by the agreement, Withers, by separate agreement, executed by himself and the corporation, waived the default and extended the time until January 1, 1914, for procuring selling contracts aggregating fifty thousand dollars, making sales aggregating two hundred acres of land and paying the aggregate sum of two thousand five hundred dollars. The new agreement was conditioned that no other condition of the contract of sale should be waived, and that the time for performance of any other provision of the contract should not be extended or affected; also, that this new agreement should only become effective when consent to the execution thereof

was executed by all the guarantors of the note executed and referred to in the first agreement. Pursuant to this requirement, each of the defendants signed an instrument, which was annexed to and made part of the new agreement, whereby each of them jointly and severally requested and consented to the execution of the agreement and the modifications therein provided, and stipulated that neither the execution of the new agreement nor said modifications should modify or release the liability of any of them under their guaranty of said note; such guaranty being thereby ratified, approved and confirmed.

Thereafter, on July 29, 1913, another agreement was made and signed by plaintiff Withers as the first party, Brook-Wood Acres, Inc., the second party, and all of the defendants as third parties, wherein, after reciting the agreement of sale, February 21, 1913, and the extension agreement of July 15, 1913, the corporation and the defendants agreed that plaintiff might at any time waive or modify all or any of the provisions of the agreement of sale of February 21, 1913, and that any departure from said agreement by Withers should not in any way waive, release, or modify the liability of the corporation or of the defendants under the promissory note executed and referred to in the agreement of February 21, 1913, or under the guarantee of said note by the defendants.

On December 15, 1914, plaintiff and Brook-Wood Acres, Inc., entered into an agreement in writing, modifying the agreement of the main contract of February 21, 1913, and requiring a balance to be struck as of January 1, 1915, which said balance should constitute the unpaid portion of the purchase price of the land, and providing for the payment thereof. This agreement provided that it should not be binding until the written consent to and request for its execution, annexed thereto, was executed by the guarantors of the note referred to in the main contract. It further provided that the limitation of personal liability of twenty-five thousand dollars of the corporation was waived by it to the end that it became obligated the full amount of the unpaid purchase price. Concurrent with the execution of this agreement, and as part of the same transaction, each of the guarantors, including the defendants, in writing consented to and requested the execution thereof, and in

consideration of the agreement they each waived the statute of limitations upon the guarantee of the note to the end that the statute should not begin to run on said guarantee prior to the 1st of January, 1918.

On the same day, December 15, 1914, each of the defendants other than E. C. Mills and Mabel Corse Mills signed an instrument in writing, by which, after reciting the contract of February 21, 1913, and the guarantee of the note by them, together with the recital of the various extensions, they jointly and severally guaranteed the full payment of the note for one hundred and fifty thousand dollars, waiving presentment, demand for payment, notice of nonpayment, and protest, it being the declared intention thereof, according to the document, among other things, to guarantee said note unqualifiedly and to waive the twenty-five thousand dollar limitation upon the liability of the guarantors and each of them.

Various contracts had from time to time been made by the parties under the provisions of the agreement of sale, and on the twenty-sixth day of January, 1915, plaintiff and Brook-Wood Acres, Inc., agreed that there was due and unpaid from the company to plaintiff, under the agreement and the various contracts, the sum of $130,000.54, together with interest thereon at the rate of six per cent, from and beginning with the fifteenth day of January, 1915, and provided for designated credits upon the happening of certain contingencies.

On February 25, 1915, the Berkeley Bank of Savings and Trust Company was designated by Withers and the Brook-Wood Acres, Inc., as third party to the agreement in place of Burpee and Walter. The latter, by deed, joined in by the wife of each, conveyed the property to the Berkeley Bank of Savings and Trust Company, and delivered the promissory note to the bank.

Further defaults being made by Brook-Wood Acres, Inc., plaintiff brought this action against defendants on April 5, 1915, on their guarantee. No demand was made upon defendants before bringing the action, neither was the property sold by the trustee prior to that time. Pending trial, however, the Berkeley Bank of Savings and Trust Company duly sold the property upon the demand of the plaintiff, under the terms of the agreement of sale. The net pro-

ceeds of said sale were the sum of $45,112.35, which sum said plaintiff credited on the note set forth in plaintiff's complaint herein.

Upon the filing of the complaint, the defendants Bousfield, Ver Mehr, and Dodge filed their answers denying any liability under the guarantee, and alleging that there was no consideration for the same. The cross-complaint admitted the execution of the instrument of the fifteenth day of December, 1914, waiving provisions of the guarantee, limiting their liability thereunder to twenty-five thousand dollars, but alleging that the defendants never agreed that said guarantee should be an unrestricted guarantee of the full payment of the note, but that said waiver only guaranteed the deficiency, if any, up to one hundred and fifty thousand dollars, which should remain to satisfy the balance of the purchase price of the real property, which was the subject of the agreement of sale, after the same had been sold, and the proceeds divided according to that contract.

By way of cross-complaint, which defendants Bousfield subsequently filed, it was alleged that the instrument of December 15, 1914, by which defendants Bousfield, Dodge, and Ver Mehr jointly and severally guaranteed the full payment of the note for one hundred and fifty thousand dollars, waiving presentment, and unqualifiedly waiving the twenty-five thousand dollar limitation upon the liability of the parties (already referred to) was intended to mean, and its legal consequences were intended to be, that said defendants waived the limitation of twenty-five thousand dollars, contained in the guarantee for said note, and that they were to be liable for the deficiency, if any, up to one hundred and fifty thousand dollars, which should remain of the said purchase price after the real property, described in the agreement of sale, had been sold, and the proceeds applied according to the terms thereof, but through the mutual mistake of the defendants and the plaintiff, and the Brook-Wood Acres, corporation, said instrument failed to express that intention in so many words, and prayed that the instrument be reformed accordingly.

The court found in favor of plaintiff and against the defendants on all points, and, after crediting the net proceeds of the sale of the property made by the substituted trustee, the Berkeley Bank of Savings and Trust Company,

of $45,112.35, gave judgment against defendants Mills in the sum of twenty-five thousand dollars, and against defendants Bousfield, Ver Mehr, and Dodge in the sum of $58,554.36, together with the sum of five thousand dollars attorneys' fees.

Appellants contend that the main agreement, the contract of February 21, 1913, was not a contract of purchase and sale of real property, and that the note for one hundred and fifty thousand dollars was not a note for the purchase price of the land, but that in reality it was executed and deposited with the trustees as a penalty; that the recital in the preamble of the contract "that the said first party (plaintiff) has sold to the said second party (Brook-Wood Acres Company, Inc.), and the said second party has bought from the said first party, all upon the terms and conditions, and in the manner hereinafter set forth, and purchase price thereof to be payable as hereinafter set forth, that certain real property, etc.," is palpably untrue. This contention cannot be supported by a logical analysis of the note, the deed and the agreement, when read together. In view of the plain and unambiguous statement in the agreement, we are satisfied, as a matter of fact, that the note represented the purchase price paid for Brook-Wood Acres.

We prefer to accept the view of respondent that the parties to the contract intended to be and were bound by its recitals. (Code Civ. Proc., sec. 1962, subd. 2.) From all the surrounding circumstances attending the transaction, we are led to conclude that no other contract relative to the sale of the land was contemplated, and that the note for the one hundred and fifty thousand dollars was executed by the corporation and delivered to the trustees, as the evidence of, and for the purchase price of, the tract. The main agreement of February 21, 1913, in paragraph 29 thereof, refers to the note "for the principal sum of one hundred and fifty thousand dollars ($150,000.00), representing the purchase price to be paid for said Brook-Wood Acres; the payment of which note has been guaranteed, jointly and severally by" the defendants. Concurrently with the execution of the ratification agreement of December 15, 1914, and as part of the same transaction, the appellants, and the other guarantors, consented to and

requested the execution of the said ratification agreement which by its terms specifically refers to and deals with the note for the one hundred and fifty thousand dollars. Appellants, by their own acts, therefore, are estopped from claiming the note to be a penalty, and not evidence of the purchase price for the land. The note is a demand note. Appellant contends that as there is no allegation in the complaint that a previous demand was made on the maker of the note, or that suit had been instituted against it (which would have taken the place of a formal demand), and as there was no proof in support of any such demand or suit, the maker of the note never became liable, and the action against the guarantors was premature.

[7] A guaranty is a promise to answer for the debt of another person, and it may be enforced, upon default of the principal, without any previous demand or notice. By its various transitions the contract of guaranty in this case became an absolute undertaking to pay the whole debt of Brook-Wood Acres, Inc., if the company did not, and no mere delay of plaintiff to proceed against the maker of the note, or to enforce any other remedy, can be availed of by the guarantors as a defense. (*First Nat. Bank* v. *Babcock,* 94 Cal. 96, 104, [28 Am. St. Rep. 94, 29 Pac. 415]; *Carver* v. *Steele,* 116 Cal. 116, [58 Am. St. Rep. 156, 47 Pac. 1007].) This is not an action for the collection of the Brook-Wood Acres, Inc., debt as such. It is an action upon an independent contract of the defendants. There is no privity, or mutuality, or joint liability between the principal debtor and its guarantors. (*Adams* v. *Wallace,* 119 Cal. 67, 71, [51 Pac. 14].) Moreover, the defendants, including appellants, made an independent contract upon which they became liable without regard to the sale of the property, under the terms of the trust, as against the principal debtor. (*Kinsel* v. *Ballou,* 151 Cal. 754, 762, [91 Pac. 620]; *Adams* v. *Wallace, supra.*)

[8] This case presents no different aspect from the foregoing, and numerous other cases, decided by the courts of last resort of this state, in which it has been held that regardless of the necessity for exhausting the security given, before resorting to the personal liability of the maker of a note, nevertheless an indorser or guarantor may be sued

upon his personal liability before and without such action having been taken.

[9] It was proper for the court to allow the attorney fee included in the judgment.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 18, 1919.

All the Justices concurred.