[Civ. No. 3811. Second Appellate District, Division Two.—June 19, 1923.]

IMPERIAL WATER COMPANY No. 4 (a Corporation), Respondent, v. EDWIN A. MESERVE et al., Appellants.

[1] PLEADING—ACTION FOR WATER SOLD AND DELIVERED—DAMAGE TO CROPS—CROSS-COMPLAINT.—In an action by a mutual water company to recover payment for water sold and delivered, a cross-complaint for damages for the overflowing of defendants' lands by reason of the wrongful and negligent acts of plaintiff in per-

mitting its canals and distributing system to become choked with weeds, grasses, silt, and deposits is sufficient as against a general demurrer, where it is alleged in such cross-complaint that the overflowing waters "are the same waters which plaintiff refers to in its complaint."

[2] ID.—UNCERTAINTY—DEMURRERS.—The cross-complaint in such action is not demurrable for indefiniteness or uncertainty merely because it does not state the precise times when plaintiff negligently permitted its canals to become filled with weeds and growths or when it undertook to carry water through its canals and deliver it to defendants, those being matters which rest peculiarly within the knowledge of plaintiff; neither is such cross-complaint indefinite and uncertain because the lands to which plaintiff undertook to carry the water are not specifically described.

[3] ID.—DAMAGES—LOSS OF PROFITS.—Such cross-complaint having alleged that the overflowing of defendants' land and the "scalding" of the alfalfa damaged those crops in an amount equal to a specified sum of money, it was not indefinite and uncertain because it did not allege the precise amount of profit defendants would have realized had the land not been wrongfully overflowed.

[4] GUARANTY—ACTION FOR WATER SOLD AND DELIVERED—PLEADING—OBLIGORS.—Where the agent of an owner of land signs an order for the delivery of water to certain persons, whom he refers to as his tenants, and such order recites, "I hereby guarantee the payment thereof," such agent cannot be held as an original obligor jointly with the owner and the tenants, but only as a guarantor in an action brought upon his contract of guaranty.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

Edwin A. Meserve, *in pro. per.,* and Shirley E. Meserve for Appellants.

A. L. Sebille and Bruce Sebille for Respondent.

FINLAYSON, P. J.—The defendants Edwin A. Meserve and Harry W. Meserve have appealed from a judgment in favor of plaintiff in an action brought by it against appellants and one D. L. Smith to recover a sum alleged to be due from the three defendants for water sold and delivered to them by plaintiff.

This is a companion case to *Imperial Water Co. No. 4* v. *Meserve, ante,* p. 593 [217 Pac. 548]. The water for the price of which this action was brought was delivered to and used upon a tract of 320 acres of land owned by the defendant Edwin A. Meserve. The complaint, *mutatis mutandis,* is similar to that which plaintiff filed in the companion case. In a broad, general way the facts are quite similar to those of the other case, with, however, certain important differences presently to be mentioned.

[1] The defendant Edwin A. Meserve filed a cross-complaint wherein he alleges substantially the following: Plaintiff is a mutual water company organized for the purpose of delivering water to its stockholders at cost; "the waters hereinafter alleged and referred to are the *same* waters which plaintiff refers to in its complaint"; plaintiff negligently permitted its canals and distributing system to become choked with weeds, grasses, silt and deposits, by reason whereof it was rendered incapable of distributing water through its canals to the lands of its stockholders; cross-complainant owns 320 shares of plaintiff's capital stock entitling him to water on his 320 acres of land; during all of the times in plaintiff's complaint mentioned crosscomplainant's tract of land was highly improved and planted to alfalfa, and but for the circumstances alleged in his cross-complaint he would have received large returns and profits therefrom; at divers times during the four years mentioned in its complaint plaintiff undertook to carry water through its canals and deliver it to the land of cross-complainant and to the lands of other land owners, but because of the weeds and deposits the water could not be carried through its canals; as a result of this condition the water was caused to overflow the banks of the canals on to and upon cross-complainant's land "at times when water coming on said land would result in the scalding and burning" of the alfalfa, "with the result that large portions of the alfalfa [on cross-complainant's land] were ruined and destroyed"; these overflowing waters frequently and in large quantities "wrongfully flowed out and upon defendant's said 320 acres of land, drowning out, scalding and destroying the crops growing thereon, thereby causing this defendant to sustain injuries and damages in the sum

of $3000.00''—for which amount cross-complainant prayed judgment.

To this cross-complaint plaintiff demurred upon the ground that it is indefinite and uncertain, the particulars of the alleged uncertainty and indefiniteness being specifically pointed out. The demurrer was sustained, and the appellant Edwin A. Meserve now contends, and, we think, with reason, that the ruling was prejudicial error. Unlike the cross-complaint filed in the companion case, the one here under consideration shows that the relief sought thereby does relate to and depend upon the contract or transaction upon which the action was brought. It shows on its face, by facts specifically alleged, that the relief sought thereby is related to the contract of sale under which plaintiff alleges that it sold and delivered the water to the three defendants, and that it is relief which depends upon the "transaction" which is involved in that sale and in the delivery of water thereunder. This is the effect of the allegation in the cross-complaint that the waters which damaged cross-complainant's crops are "the same waters which plaintiff refers to in its complaint." Manifestly, if the waters which plaintiff delivered to defendants under its contract of sale are the very waters which cross-complainant alleges damaged his crop by reason of plaintiff's negligence in permitting its canals to become choked with weeds, then the relief which cross-complainant seeks by reason of such damage is related to that contract of sale and is dependent upon the transaction upon which plaintiff brought its action. Without such sale and delivery by plaintiff there could have been no such damage as cross-complainant alleges. We may entertain some doubt as to the probability that the waters which damaged cross-complainant's crops are the very waters which plaintiff alleges it sold and delivered to cross-complainant and his two co-defendants. But be that as it may, such is the effect of the allegation that the waters referred to in the cross-complaint are the *same* waters which plaintiff refers to in its complaint, and we are bound to assume the truthfulness of the allegation when considering the sufficiency of the cross-complaint as against a demurrer thereto.

Since it is thus made to appear not only that cross-complainant has a cause of action against plaintiff for dam-

ages but that the relief sought relates to "the contract or transaction upon which the action is brought," it follows that the cross-complaint would have been invulnerable as against a general demurrer, had one been filed. The judgment, therefore, must be reversed as to the appellant Edwin A. Meserve unless his cross-complaint is obnoxious to plaintiff's special demurrer, i. e., unless it is indefinite and uncertain in the particulars set forth in that demurrer.

Proceeding now to a consideration of the particulars enumerated in the demurrer as those in respect to which it is claimed there is indefiniteness and uncertainty. [2] The cross-complaint is not demurrable for uncertainty or indefiniteness merely because it does not state the precise times when plaintiff negligently permitted its canals to become filled with weeds and growth or when it undertook to carry water through its canals and deliver it to defendants. These are matters which rest peculiarly within the knowledge of plaintiff. Neither is the cross-complaint indefinite or uncertain because the lands to which plaintiff undertook to carry water are not specifically described, nor because the precise amount of profit which cross-complainant would have realized had his land not been wrongfully overflowed is not alleged. By averring that the waters which plaintiff alleges were sold and delivered to defendants are the "same" waters which overflowed cross-complainant's land and destroyed his crops, the cross-complaint plainly identifies the crops and the land whereon they were grown. [3] And when it further is alleged that the overflowing of this land and the "scalding" of the alfalfa damaged these crops in an amount equal to $3,000, it is made to appear, from the allegations of the cross-complaint read as a whole, what was the nature, source, and extent of cross-complainant's damage. More than this was not requisite. "All that is required of a plaintiff, even as against a special demurrer, is that he set forth in his complaint the essential facts of his case with reasonable precision and with particularity sufficiently specific to acquaint the defendant of the nature, source and extent of his cause of action." (*Goldstein* v. *Healy*, 187 Cal. 210 [201 Pac. 463].) It follows that the demurrer to the cross-complaint should have been overruled, and that the order sustaining it was error prejudicial to the appellant Edwin A. Meserve.

[4] Reversible error also was committed with respect to the appellant Harry W. Meserve. The situation presented by this case differs from that which was before us in the companion case. The two actions differ in that here the defendants did not jointly participate in farming the land to which the water was delivered, nor did they agree to participate jointly in a division of the crops or in the profits which it was expected would be derived therefrom. Here the land was farmed by but one of the defendants—the defendant Smith—who leased it from the owner, the defendant Edwin A. Meserve. Harry W. Meserve's sole connection with the 320 acres lay in the fact that, as his brother's agent, he represented the latter in certain matters relating to the land. He testified that in all his dealings he was acting for his brother and not for himself. This testimony was not contradicted. If Harry W. Meserve incurred any liability whatever to plaintiff it was that of a guarantor and not that of a purchaser of water primarily liable therefor. The land having been leased by Edwin A. Meserve to Smith, the water was delivered in virtue of the former's ownership of the water right represented by his 320 shares of plaintiff's capital stock. Some six or seven weeks before Edwin leased the land to Smith, Harry signed and delivered to plaintiff, on what evidently was one of plaintiff's blank order-forms, the following order for water:

"Brawley, Cal., August 13, 1912.

"Order of Owner.

"To Imperial Water Co. No. 4:

"You are hereby authorized to deliver water, under the rules and regulations of the company, to D. L. Smith and A. G. Grenagle, who are my tenants, as ordered by them, and I hereby guarantee the payment thereof. The property on which this water is to be used is tract #133 by the Official Resurvey. T. 13 S., R. 14 E., S. B. M.

"H. W. MESERVE.

"Note: This order must be signed by the party in person or his agent duly authorized in writing."

It is true that in this document Harry W. Meserve refers to Smith and Grenagle as "my tenants." But the document specifically declares that the liability which Harry undertakes is that of a guarantor. It does not fasten upon him

the liability of a purchaser of water nor even that of a land-lord ordering water by reason of his status as a stock-holder in the plaintiff corporation. He does not under-take to order water either for himself or for those whom he inaccurately refers to as his tenants. What he does do is to *authorize* the company to deliver water to Smith and Grenagle *"as ordered by them."* It is for water thus to be ordered by Smith and Grenagle that Harry W. Meserve guarantees payment.

Plaintiff offered the order in evidence. Defendants ob-jected upon the ground that it was incompetent, irrelevant, and immaterial. It was further objected to by Harry W. Meserve upon the ground that "he is not sued here as a guarantor, but as a purchaser of water." The objection was overruled and the order admitted in evidence.

The contract of guaranty evidenced by this document seems to be the sole basis for any liability on the part of Harry W. Meserve. Without considering whether the in-strument was admissible as against Edwin A. Meserve we think it clearly was inadmissible as to his brother Harry. The contract of guaranty was not the contract alleged in the complaint. Under the contract of sale upon which plaintiff brought its action the undertaking of each de-fendant was direct and primary. Under that contract, had plaintiff proved it to have been made as alleged in the com-plaint—that is, had it proved that the three defendants purchased the water—all of the defendants, Harry W. Meserve included, would have been bound as original obligors, and there would have devolved upon them a primary obligation to pay for the water. But the contract of guar-anty which the plaintiff sought to fasten on Harry W. Meserve was the latter's separate contract and was wholly distinct from the contract of sale alleged in the complaint. *Non constat* but that if plaintiff had brought its action against Harry upon the latter's contract of guaranty he could have pleaded and proved a good defense thereto.

The contract of a guarantor is his own separate contract; it is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and is not an engagement jointly with the principal to do the thing. He is not a joint contractor with his principal. He is not primarily bound to do what his principal has

contracted to do, but only to answer for the consequences of the latter's default. His is an independent contract with which his principal has nothing to do. His liability is secondary, and his contract is collateral to that of his principal. (*Adams* v. *Wallace*, 119 Cal. 68, 71 [51 Pac. 14]; *Kinsel* v. *Ballou*, 151 Cal. 762 [91 Pac. 620]; *Cooke* v. *Mesmer*, 164 Cal. 332, 340 [128 Pac. 917]; *Schehr* v. *Berkey*, 166 Cal. 161 [135 Pac. 41]; *Withers* v. *Bousfield*, 42 Cal. App. 304, 319 [183 Pac. 855]; *Kelley* v. *Goldschmidt*, 47 Cal. App. 38 [190 Pac. 55]; *Virden* v. *Ellsworth*, 15 Ind. 144; *Shore* v. *Lawrence*, 68 W. Va. 220 [69 S. E. 791]; *Bodine* v. *Times-Journal Publishing Co.*, 26 Okl. 135 [31 L. R. A. (N. S.) 149, 110 Pac. 1096].) "There is no privity, or mutuality, or joint liability between the principal debtor and his guarantor." (*Adams* v. *Wallace, supra.*)

Harry W. Meserve having been sued upon a contract under which, had it been proved, he would have been liable as an original obligor jointly with his two codefendants, it was error to enter a judgment against him upon a liability created by an entirely distinct and independent contract to the admission of which he made due and timely objection.

The judgment is reversed.

Works, J., and Craig, J., concurred.