BANK OF ITALY, Plaintiff, *v.* MERCHANTS' NATIONAL
BANK, Defendant.

(Supreme Court, Chautauqua Equity Term, November, 1920.)

Sales — guarantee of payment — bills of exchange — bills of lading — negotiable instruments — Personal Property Law, § 100, rule 1.

> The consignee of two cars of dried grapes shipped from California deposited with defendant funds more than sufficient to pay the purchase price, upon presentation of bills of lading. The defendant sent a telegram to plaintiff, a California bank, guaranteeing payment upon presentation of the original bills of lading. The seller drew two bills of exchange on the consignee for the amount of the shipments, payable to the order of plaintiff. The bills of exchange with the original bills of lading attached thereto were discounted by plaintiff in reliance upon defendant's guarantee of payment. Upon due presentation of the bills of exchange and of lading the defendant refused to pay and the bills of lading were protested. Upon overruling a demurrer to the complaint in an action to recover on the bills of exchange, *held:*
>
> That in the circumstances defendant's telegram fairly interpreted created a primary and absolute obligation on defendant's part to pay the purchase price of the goods upon presentation to it of the bills of lading therefor.   (Pp. 317, 318.)
>
> The agreement referring as it does to two cars "bought" both under section 100, rule 1, of the Personal Property Law, and the common law, which, as to this point, it formulated, imports a completed sale and the prior passing of the title to the property to the consignee, even though delivery had not been made.   (P. 318.)
>
> A guarantee of payment creates a direct and original obligation to pay the indebtedness which is the subject thereof, and the question under an instrument guaranteeing payment of the obligation of a third party depends upon the intention of the parties to the agreement, and the fact that the word "guarantee" was used in the telegram does not lead to the conclusion that the agreement was to be a collateral one.   (Pp. 318, 319.)

The complaint alleging that the consignee had deposited with defendant more than enough to pay the purchase price of the two cars of grapes, the acceptance of the 'bills of exchange by the consignee or the defendant was not necessary to create a liability therefor on the part of defendant to plaintiff. (P. 319.)

In the circumstances the drawing of the bills of lading is to be regarded not as a separate transaction to be tested by the technical rules applicable to negotiable paper, as such, but as a convenient method of making the payment provided for in defendant's guarantee and of transmitting the money from New York to California. (Id.)

DEMURRER to amended complaint.

Nugent & Heffernan, for plaintiff.

Thrasher, Cole & Clapp, for defendant.

WOODWARD, J. The defendant, Merchants' National Bank of Dunkirk, N. Y., demurs to the amended complaint of the plaintiff, Bank of Italy, of San Francisco, Cal., upon the ground that the complaint, consisting of two counts, in all essential respects similar, as to two shipments arising out of the same transaction, does not state causes of action. The material facts, thus, now undisputed, may be summarized as follows:

On February 1, 1920, Sanesi & Maron Co., of Dunkirk, N. Y., *bought* of Silvio Rossi, of San Francisco, two cars of dried grapes, the purchase price of which amounted to $24,000. Said grapes were delivered on February 2, 1920, to a railroad company at Fresno, Cal., for shipment to Sanesi & Maron Co., of Dunkirk, and a bill of lading was issued for the first carload, on February 2, 1920, and for the other carload, on February 14, 1920, the two carloads being shipped on said respective dates.

On February 2, 1920, Sanesi & Maron Co. deposited with the defendant bank at Dunkirk $24,000, to pay the purchase price of said two carloads of grapes, on presentation to said bank of the original bills of lading.

On February 2, 1920, the defendant bank, for value received, sent plaintiff the following telegram:

Bank of Italy, "Dunkirk, N. Y., *Feb.* 2, 1920.

" San Francisco, Cal.:

" We guarantee payment two cars dried grapes bought by Sanesi and Maron Company this city from Silvio Rossi San Francisco amounting about twenty-four thousand dollars, payment will be made on presentation original bill lading here.

" The Merchants National Bank."

On February fourth and February fourteenth, respectively, Rossi drew two bills of exchange on Sanesi & Maron Co., one for $7,849.80 and the other for $14,406, the amounts of said two shipments, in favor of, and payable to the order of the Bank of Italy, and said bills of exchange evidenced and represented the purchase price of the two cars of dried grapes mentioned in said telegram.

The original bills of lading, representing these carloads of grapes, were attached to the bills of exchange, and such bills of exchange and of lading were duly presented to plaintiff by Rossi; the plaintiff, in reliance upon the promise of said defendant bank, advanced to Silvio Rossi $22,255.80, less discount, and plaintiff, before maturity, became and remains the owner and holder of said bills of exchange, evidencing the purchase price of said two cars of grapes.

The bills of exchange and of lading were duly presented to the defendant bank for payment, which was demanded, and was refused, whereupon the bills were

duly protested for nonpayment, and the same remain wholly unpaid.

Plaintiff demands judgment for the amounts represented by these two bills of exchange.

The principal grounds urged in support of the demurrer are that the obligation of defendant bank was merely secondary and in the nature of a collateral guaranty, and contemplated liability on the part of defendant bank only in case of non-performance of the contract of sale by Sanesi & Maron Co., and that in the absence of allegations in the complaint of facts constituting such non-performance defendant could not be held liable to plaintiff, and further, that the bills of exchange, not having been accepted by defendant, created no liability against it.

Plaintiff, on the other hand, contends that the telegram sent by defendant to plaintiff constituted a direct and absolute agreement to pay for the two carloads of grapes on presentation of the original bills of lading to defendant, and that it was not a collateral agreement, or technically a mere guarantee to meet this obligation of payment only in case of default by the Sanesi & Maron Co.

Counsel for the respective parties have handed in carefully considered briefs, presenting arguments and citing authorities in this and other states, to sustain their respective views, but these various holdings need not be regarded as conflicting, nor as militating against the conclusion, which I reach, that the telegram, under a fair interpretation, and in the circumstances disclosed in the complaint, was intended to and did create a primary and absolute obligation on the part of defendant bank to pay the purchase price of the two carloads of grapes upon presentation to it of the bills of lading therefor.

In the first place, this agreement refers to two cars

of grapes "*bought*" by Sanesi & Maron Co. from Silvio Rossi, and thus imports a completed sale and the prior passing of title to the property to Sanesi & Maron Co., even though the delivery had not been made, both under the Sales Law of this state and the common law, which, as to this point, it formulated. Pers. Prop. Law, § 100, rule 1.

It must be assumed that Rossi would not have actually shipped the grapes to the Sanesi & Maron Co., several thousand miles away, without certainty of payment, upon delivery of the bills of lading to Sanesi & Maron Co., or their authorized representative, the defendant bank, and it is alleged and admitted that Sanesi & Maron Co. actually deposited with the defendant bank at Dunkirk $24,000 for the express purpose of paying the purchase price of these two cars of grapes, on presentation to the bank of the bills of lading.

It is difficult to perceive, on this showing of undisputed facts, upon what theory the defendant bank now resists payment of this purchase price on presentation to it of the bills of lading, which afford presumptive, if not conclusive, evidence that Rossi shipped and, therefore, delivered the two cars of grapes bought of him by Sanesi & Maron Co. The complaint, indeed, alleges, and it is admitted, that the two cars of grapes were shipped and the bills of lading in question issued for the same.

The fact that the word " guarantee " was used in the telegram does not lead to the conclusion that the agreement was to be a collateral one, as it is well settled that a guarantee of payment creates a direct and original obligation to pay the indebtedness which is the subject thereof, and that the question under an instrument guaranteeing *payment* of the obligation of a third party depends upon the intention of the parties to the agreement. *First Nat. Bank* v. *Jones*, 219 N. Y.

312, and cases there cited; *Catskill Nat. Bank* v. *Dumary,* 206 id. 550, 555.

Nor do I think that it was necessary, under the undisputed circumstances and facts set forth in the complaint, that Sanesi & Maron Co. or defendant bank should have accepted the bills of exchange drawn by Rossi on Sanesi & Maron Co., and which were made payable to the order of plaintiff bank, and discounted by it for Rossi, to create a liability therefor on the part of defendant to plaintiff.

The complaint states that Sanesi & Maron Co. deposited with defendant more than enough to pay the purchase price of the two cars of grapes, and the guarantee or promise of defendant was to pay for these two cars of grapes upon presentation to it of the bills of lading.

The drawing of the bills of lading, under these circumstances, is to be regarded as a convenient method of making the payment provided for in the guaranty, and of transmitting the money from Dunkirk to Fresno, and not as a separate transaction to be tested by the technical rules applicable to treatment of negotiable paper as such. The rights of all of the parties to the transaction were amply protected by this mode of remittance of the purchase price, and to construe it otherwise than as an instrumentality of payment would be to give effect to the shell rather than the substance of the transaction.

I am aware that Mr. Justice Wheeler sustained a demurrer to the original complaint, as distinguished from the present amended complaint now before the court, but in a memorandum handed down by him he stated that he considered the demurrer to the original complaint good " on the ground of the absence in the complaint of sufficient allegations connecting the draft sued on with the sale and purchase price of the

grapes mentioned in the guarantee set up," and he granted leave to plaintiff to amend the complaint, of which it availed itself and added allegations which clearly meet the objections to the original complaint pointed out by Mr. Justice Wheeler.

In the view thus taken of the matter, the demurrer to the complaint is not well taken, and should be overruled, with leave to defendant to answer upon the usual. terms to be specified in the order or interlocutory judgment to be entered hereon.

Judgment accordingly.