[Civ. No. 4160. Second Appellate District, Division One.—May 8, 1925.]

## CAWSTON OSTRICH FARM (a Corporation), Respondent, v. WALTER J. SALOMON et al., Appellants.

[1] SURETIES—ASSIGNMENT OF LEASE—GUARANTY OF PERFORMANCE.— Where the lessee, with the consent of the lessor, assigns his lease to a third party and guarantees to the lessor "the prompt payment of the rent reserved in said lease when due" by the third party, "as well as the prompt and full and faithful performance of all the terms and conditions contained in said lease" by said third party, his obligation becomes that of a surety or guarantor.

[2] ID.—RES ADJUDICATA—JUDGMENT OF SISTER STATE.—While a judgment by a superior court of this state, in an action by said lessor against said original lessee based upon a breach of the lease by said assignee and such contract of guaranty, could not be used by said assignee in the sister state in which the demised premises were situated as a bar to the lessor's claim against the assignee in the court of that state, neither is said original lessee bound by a judgment establishing the lessor's demands against the assignee in the court of said sister state.

[3] ID.—PAYMENT BY SURETY—SUBROGATION TO COLLATERAL.—Where, following a default by said assignee, the lessor sued the original lessee upon said contract of guaranty, and the judgment in said

---

3.  See 25 R. C. L. 1387.

action established the total amount of liability secured to the lessor by a sum of money belonging to said assignee and which was deposited with the lessor as security for the performance of the provisions of the lease, said original lessee, upon payment of said judgment, was entitled to be subrogated to and have the benefit of the money thus placed in the hands of the lessor; and such right of subrogation was not lost because it was asserted in an independent action subsequently brought against the lessor, and not in the action instituted by the lessor against said original lessee.

(1) 28 **C. J.**, p. 955, n. 81.   (2) 34 **C. J.**, p. 932, n. 29.   (3) 37 **Cyc.**, p. 402, n. 42.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Chas. S. Crail, Judge.  Affirmed.

The facts are stated in the opinion of the court.

B. P. Woodard and Grant Jackson for Appellants.

Donald S. Barker for Respondent.

CONREY, P. J.—This action is described by the plaintiff as a suit in equity to enforce a right of subrogation in favor of the plaintiff as equitable owner of a $1,500 fund.

On the thirty-first day of May, 1912, Salomon executed to the plaintiff Cawston Ostrich Farm, a California corporation, a five-year lease of a storeroom in the city of New York. At that time the plaintiff deposited with the defendant $1,500 in accordance with a paragraph of the lease which read as follows: "Twentieth.  And the said tenant hereby deposits with the said landlord the sum of fifteen hundred dollars as part security for the faithful performance of all the conditions and covenants of the said lease, which security is to remain in the possession of the said landlord until the expiration of the within lease, and then returned to the said tenant if all the considerations and covenants of the within lease have been complied with, but this de-deposit shall not be considered in any sense as liquidated damages."

Under date January 6, 1914, a written agreement was entered into between Salomon, party of the first part, Cawston Ostrich Farm, ·party of the second part, and Cawston

Ostrich Farm Corporation, a New York corporation, party of the third part. In that agreement the party of the second part assigned the lease to the party of the third part, and Salomon consented thereto. This agreement referred to said $1,500 fund as follows: "V. The party of the second part hereby transfers and assigns to the party of the third part the sum of fifteen hundred dollars, now deposited with the party of the first part as security under the terms and conditions of clause number twenty of the said lease and hereby authorizes and directs the party of the first part to pay same to the party of the third part whenever the same may be due under the terms of this lease." In said agreement of January 6, 1914, it was also provided: "The party of the second part hereby guarantees to the party of the first part the prompt payment of the rent reserved in said lease when due by the party of the third part, as well as the prompt and full and faithful performance of all the terms and conditions contained in said lease by the party of the third part."

In September, 1914, Cawston Ostrich Farm Corporation, with the written consent of Salomon, assigned said lease to one Frances Cohen, and also assigned to her said sum of $1,500 deposited with Salomon as security under the terms and conditions of said clause number twenty of the lease, and at the same time authorized and directed Salomon to pay the same to Cohen "whenever the same may be due under the terms of the said lease." Cawston Ostrich Farm had no knowledge of said assignment to Cohen and did not consent thereto. Cohen entered into possession of the leased premises and remained in possession for about two months when she was dispossessed under a judicial proceeding for nonpayment of the rent for October, 1914. Thereupon Salomon went into possession and made certain alterations in the store premises. Thereafter Salomon leased the premises (from and after November, 1914), and received certain sums as rental therefor.

In April, 1915, Salomon brought an action (number B–24138) against Cawston Ostrich Farm, in the superior court of Los Angeles County, to recover various sums alleged to be due from said Cawston Ostrich Farm to Salomon, by reason of nonpayment of certain taxes and nonpayment of the rent of October, 1914, and by reason of the fact

that the rents received by him from November, 1914, to March, 1915, were less· than the amount due to him under the lease contract. This action resulted in a judgment entered January 8, 1917, in favor of Salomon and against Cawston Ostrich Farm in the sum of $2,197.68 and costs.

On October 21, 1920, the plaintiff made tender to Salomon of the sum of $849.55 on account of said judgment, and demanded that he apply said sum of $1,500, and interest thereon at the rate of four per cent per annum from the date of the deposit, toward the satisfaction of the judgment. The court, in the case at bar, found in favor of Salomon on the issue relating to his alleged obligation to pay interest on said deposit, and determined the amount which plaintiff shall pay, which sum, together with said sum of $1,500, will satisfy the said judgment.

According to the findings in the present action (and there are no assignments of error as to the findings), the judgment recovered by Salomon against Cawston Ostrich Farm (plaintiff and respondent in the present action) represented all of the indebtedness or liability due or payable from this plaintiff to Salomon under said lease, or otherwise, either at the date of the judgment or thereafter. Said fund of $1,500 has remained in possession of Salomon at all times from and after the time of its deposit when the lease was executed. The plaintiff herein alleged and the court found that said sum is so held by Salomon "subject only to the right of said Salomon to apply said moneys and the accrued interest thereon toward the indebtedness of said Frances A. H. Cohen to said Salomon for rental and taxes arising out of the assumption by her of the obligations of the lessee under said lease from and after the date of the assignment thereof to her as aforesaid and subject to the right of this plaintiff to be subrogated in the place of said Frances A. H. Cohen and to her rights with reference to said fund of $1,500 and interest, then and there held by said Salomon as security for the obligations of the lessee under said lease as aforesaid."

The defendant Salomon alleged and the court found herein that it is the law of the state of New York that while the execution of a final warrant of dispossess, such as that obtained by Salomon in New York against the tenant Cohen, terminated the relation of landlord and tenant between Salo-

mon and Cohen, it did not terminate the obligation imposed by that paragraph of the lease wherein the lessee agreed to pay the damages sustained by Salomon, to wit, the difference between the rent reserved in the said lease and the amount of rent received by the defendant, Walter J. Salomon, on a reletting of the said premises, and that such obligation and covenant survived the severance of the said relation of landlord and tenant between the defendant, Walter J. Salomon, and the said Frances A. H. Cohen, as aforesaid. But the court further found as follows: "The defendant, Walter J. Salomon, did not, in reletting the said premises in pursuance of paragraph 28 of the said lease attached as Exhibit A to the complaint herein, or by reason of any breach of obligations of the lessee under said lease, sustain any damages except those included in the judgment in the former action of *Walter J. Salomon, plaintiff,* vs. *Cawston Ostrich Farm,* defendant, numbered B–24138 records and files Superior Court Los Angeles county."

In action number B–24138 said damages were determined as follows: The court found that in said action of Salomon against Cohen, which was a summary proceeding in the municipal court of the city of New York, judgment was entered against Cohen for the sum of $1,455, being the rent for the month commencing October 1, 1914, and costs; and that said judgment was wholly unpaid except the sum of $304.78, which Salomon received on account from the trustee in bankruptcy of Cohen. The court in said action B–24138 determined that by the institution of the said summary proceedings, and the recovery of judgment therein, and the subsequent acts of the plaintiff (referring to the changes made by Salomon in the leased premises and his reletting of the premises to other tenants), the lease to which this action relates was terminated. Thereupon the court gave judgment in favor of Salomon and against Cawston Ostrich Farm in said sum of $2,197.68, which was a sum equal to the unpaid balance of the New York judgment, plus a certain amount covering taxes paid by Salomon (to repayment of which he was entitled by an agreement in the lease), together with certain stated interest and costs. In its conclusions of law the court stated "that he is not entitled to recover any other sum or sums."

From the judgment in said action B–24138, Salomon appealed. On that appeal the judgment was affirmed. (*Salomon* v. *Cawston Ostrich Farm,* 43 Cal. App. 465 [185 Pac. 314].) The contention of Salomon on that appeal was that the judgment should have been for a larger sum and should have included the difference between the rental specified in the lease and that received, between November 1, 1914, and April 1, 1915, on the reletting of the premises.

At the trial of the present action it was stipulated: "That by reason of alleged severance of the relation of landlord and tenant between the defendant Walter J. Salomon and the said Frances A. H. Cohen, as averred in the answer herein, and by reason of alleged reletting of the said premises thereafter, the defendant Walter J. Salomon claims damages amounting to $14,012.28, for which amount the defendant Walter J. Salomon on or about the 18th day of October, 1920, brought an action against the said Cawston Ostrich Farm Corporation, the assignor of the said Frances A. H. Cohen and the assignee of the plaintiff herein, in the supreme court of the state of New York, which action is now pending and undetermined."

It was further stipulated that said deposit of $1,500 is held by Salomon under claim of right to hold it to await the result of his said action against Cawston Ostrich Farm Corporation in New York. The first question to be determined on this appeal relates to this asserted right. In giving consideration to this question it is first necessary to define the nature of the obligation on which the judgment of Salomon against Cawston Ostrich Farm is founded. Originally, when the lease was executed, this obligation was that of a principal promisor. [1] But immediately upon execution of the assignment to the Cawston Ostrich Farm Corporation, by the agreement contained therein, to which Salomon was also a party, the obligation of Cawston Ostrich Farm became that of "a surety or guarantor." This is so by the very terms of that contract which we have quoted; and this construction of the contract has been finally affirmed as between the parties to this action by the findings and judgment in said action B–24138. For in that action the court found that the allegations of paragraph X of the answer to the amended complaint were true. In that paragraph it was alleged that the agreement containing said

guaranty had been executed and that "thereafter defendant occupied the position only of a surety or guarantor according to the provisions of said written agreement, and that the liability of the defendant was thereafter limited as in and by the terms and provisions of said written agreement set forth."

Based upon the new relation thus established between Salomon and Cawston Ostrich Farm, it was held in said action B–24138, *Salomon* v. *Cawston Ostrich Farm,* that Salomon was not entitled to recover against said defendant the difference between the rental specified in the lease and that received between November 1, 1914, and April 1, 1915, from the new tenants to whom he leased the premises after Mrs. Cohen had been ejected. This was the very point involved in the appeal (*Salomon* v. *Cawston Ostrich Farm,* 43 Cal. App. 465 [185 Pac. 314]), wherein it was decided that appellant Salomon was not entitled to recover said alleged amount of lost rentals. This decision was based upon the finding of the court below, summarized by the court of appeal as follows: "After taking possession, he made no effort to rent the premises as a whole, but removed the entire front, and by the removal of the two pilasters increased the glass area four or five feet in width. He also divided the store in two by a longitudinal partition two inches thick and put two doors in the front instead of one, thus changing the demised store into two new stores, each somewhat less than eight and a half feet wide. None of the changes were made because of needed repairs or for the preservation of the premises. . . . Upon conflicting evidence, the trial court found that certain affirmative allegations of the answer were true. Among these were that by the alterations the premises were so changed that they were not adapted to the use of one tenant; that the premises were more valuable for rental purposes and more readily rentable as one store than as two, and that, if the alterations had not been made, the plaintiff could have obtained in the reletting an amount of rental equivalent to the rental payable under the lease. There was sufficient evidence to sustain these findings. Upon them the trial court concluded that by the summary proceedings and the subsequent acts of the plaintiff the lease was terminated, and that the plaintiff was entitled to recover the net amount of rents, with surcharges

unpaid for the month of October, 1914, in which the plaintiff resumed possession. The implication necessarily follows that the plaintiff was not entitled to the difference between the rents collected and those reserved in the lease after the lease was terminated. The only real question presented on this appeal is whether or not, despite the evidence and the findings, the conclusion of law upon this subject was correct." It was held that in New York, as well as in California, the obligations of the guarantor are strictly construed; and that because the described changes in the premises were made by Salomon without the knowledge or consent of the guarantor, the latter was released.

[2] Appellant Salomon contends herein that the decision of the California courts in his said former action is not *res adjudicata* as to his claims against either the Cawston Ostrich Farm Corporation, a New York corporation, or Frances A. H. Cohen of New York City. It must be conceded that the California judgment could not be used by said New York parties as a bar to Salomon's claims against them in the New York court. The two actions are not between the same parties. But it is equally true that Cawston Ostrich Farm would not be bound by a judgment establishing Salomon's demands against those parties in the New York court. As between Salomon and Cawston Ostrich Farm the issues concerning said liability must be directly determined in an action between the parties now before this court. This is precisely the thing that has been done in said action of Salomon against Cawston Ostrich Farm.

[3] Appellant next makes the following contention: That because the Cawston Ostrich Farm specifically directed Salomon to pay said deposit to the New York corporation when all of the terms and conditions of paragraph 20th of the lease had been fully complied with, and because the New York corporation made a like specific direction and authorization to Salomon to pay said deposit to Cohen, and because Cawston Ostrich Farm assigned to Cawston Ostrich Farm Corporation, together with said lease, the said deposit of $1,500, said Cawston Ostrich Farm has no further interest in said deposit and the said deposit now belongs to said Cohen as sole owner thereof, but subject to the terms and conditions of said paragraph 20th of the lease.

It is not disputed that the assignment was made, and directions given, exactly as appellant states them. Nevertheless, we are of the opinion that these facts do not affect in any way the rights of respondent Cawston Ostrich Farm asserted in this action. So far as the rights of the Cawston Ostrich Farm as guarantor are concerned, it is now settled that the existing judgment against it represents the total amount of liability secured to Salomon by the sum deposited with him. Payment of this judgment by the Cawston Ostrich Farm will in reality be a payment by the guarantor or surety on behalf of its principal. On the facts of this case, Cawston Ostrich Farm is a surety for the principal obligor, and it is of no consequence that the word "guarantees" was used in making the promise. Upon making such payment, the surety "is entitled to be subrogated to and to have the benefit of all securities which may at any time have been put into the creditor's hands by the principal debtor, or which the creditor may have obtained from the principal debtor." (Pomeroy's Equity Jurisprudence, 4th ed., sec. 1419.) "A surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor, or by a co-surety at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not." (Civ. Code, sec. 2849.) "A surety is one who at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." (Civ. Code, sec. 2831.)

Finally appellant contends that the judgment in *Salomon v. Cawston Ostrich Farm* is *res adjudicata* as to the right of the plaintiff to apply said sum of $1,500 toward the satisfaction of that judgment; in other words, that because that right was not affirmed in that action, therefore it cannot be asserted in this action. But, on the contrary, we think that respondent's right of subrogation was not involved in the decision of the former action. As is pointed out by respondent, the indebtedness for which Cawston Ostrich Farm was held liable in that action was an unliquidated amount, and until the rendition of that judgment the defendant therein could not know the amount, payment of which would entitle it to assert its right of subrogation. The existence of that right

was not submitted for decision in said former action, nor were the circumstances such that failure to demand its enforcement at that time created an estoppel against the plaintiff in the present action.

The judgment is affirmed.

Curtis, J., concurred.

Appellants' petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 6, 1925.