[L. A. No. 18408. In Bank. Dec. 23, 1942.]

H. W. EVERTS, Respondent, v. C. A. MATTESON et al., Defendants; RAYMOND H. VANDERBUSH et al., Appellants.

A. P. G. Steffes and Clifford A. Jones for Appellants.

Edmund Nelson, John E. Walter, Freston & Files and James A. McLaughlin for Respondent.

EDMONDS, J.—The appellants have been held liable for the difference between the amount due and unpaid upon a promissory note made by their predecessors in interest and the sum for which the real property securing the indebtedness was sold under the provisions of a deed of trust. The important question for decision concerns their right to limit the amount of any judgment by the fair value of the property at the time of the sale.

In 1934, the defendants Matteson borrowed $22,500 from Bank of America. To obtain this loan, which was made at the Whittier branch of the institution, the Mattesons executed their promissory note in favor of the bank and also a deed of trust, in which the bank was named as beneficiary, to certain real property owned by them. The note provided for monthly payments of principal at the rate of $100 or more and that on October 28, 1935, "the entire balance of principal and interest then unpaid shall become due and payable."

Early in 1935 the appellants agreed to buy the real property from the Mattesons. To consummate the transaction, the Mattesons deposited in escrow, with the same branch of the bank which had made the loan, their deed dated February 6, 1935, in which the appellants were named as grantees. The deed recited that the real property described in it was conveyed subject to the "deed of trust of record in the amount of $22,500.00 in favor of Bank of America N. T. & S. A., which the grantees herein assume and agree to pay."

In addition to the deed, there was delivered to the escrow department of the bank an agreement executed by the bank and the appellants under date of February 7, 1935, providing as follows: "For and in consideration of the extension for two (2) years and four (4) months of the maturity of the last installment, said maturity date being October 28, 1935, of that certain promissory note dated August 28, 1934, executed by C. A. Matteson and Martha Daley Matteson, which extension is hereby granted by Bank of America National Trust and Savings Association, I hereby guarantee the payment of the aforesaid note, together with all interest due or to become due thereon, and any renewal or extension thereof, and this guaranty shall not be affected by any forebearance to any successors in interest of the undersigned. And I hereby promise to pay the sum of . . . [$100.] or more, on the principal of said note on the 28th day of March, 1935, and . . . [$100.] or more, on the 28th day of each and every calendar month thereafter until the 28th day of February, 1938, on which said date the entire balance of principal and interest then unpaid shall become due and payable as herein above provided."

The principal of the note was not paid at its maturity as extended and, pursuant to the power of sale contained in the trust deed, the trustee sold at public auction the property described therein to the beneficiary for $19,000. The note was then assigned to the respondent who commenced this action against the original makers and the appellants to recover the difference between the amount realized by the sale and the unpaid principal and accrued interest due on the note.

In his original complaint, the respondent set forth *in haec verba* the note and the instrument signed by the appellants. He alleged the execution of the trust deed as security for

the payment of the note, and the sale of the property subject to the deed of trust after default by the defendants, and demanded judgment for the deficiency. The Mattesons having failed to appear, their default was entered. Shortly thereafter, the respondent filed an amended complaint with the same allegations as those in the original complaint but, in addition, charging that the reasonable value of the real property at the date of its sale under the deed of trust was $19,000. No service of the amended complaint was made upon the Mattesons and they did not appear in the action.

The appellants, by answer, admitted the execution of the agreement of February 7, 1935, but denied that the reasonable value of the real property when sold by the trustee was $19,000. On the contrary, they asserted its reasonable value was then $28,000. They also presented additional defenses.

By the first of these, the appellants alleged that the agreement was executed by them and the bank through a mutual misapprehension of law. According to their pleading, the officer who signed the agreement for the bank represented to them that he was familiar with the law with respect to deficiency judgments and that if they signed the agreement they would not, under any circumstances, be liable for a deficiency judgment. It was in reliance upon this representation, the answer continued, that they signed the agreement.

As a second defense, the appellants pleaded that the bank officer fraudulently induced them to execute the agreement by falsely representing that they would never be liable to pay a deficiency judgment. He told them, according to the answer, that in the event of foreclosure, an appraiser would be appointed by a court and the property would have to be bid in at the appraised value which would not be less than $54,000, this sum representing the bank's own appraisal of the property and the value at which the property was carried on its books. It was also alleged that the respondent is an officer and employee of the assignor bank who paid no consideration for the assignment to him, took the note with notice of all its infirmities, and became the holder of it after maturity.

Prior to trial, the respondent's motion to strike the defenses of fraud and mistake of law was granted. Upon trial, the respondent moved the court to strike the denial by the appellants of his allegation of reasonable value and the alle-

gation in the answer that the property had a reasonable value of $28,000 at the time of the trust deed sale. As a part of the motion, the respondent sought a ruling of the trial court excluding all evidence offered by the appellants to establish the reasonable value of the real property on the ground that they were guarantors of the note sued upon and, as such, are not entitled to invoke the provisions of section 580a of the Code of Civil Procedure. This motion was granted and the court denied the appellants' motion for leave to file an amended answer, which in substance was essentially similar to the original answer. But the proposed pleading included a more extended recital of the facts relating to the negotiations between the officers of the bank and the appellants, with the statement that, because of friendly business relations with the bank, they had confidence in it and its officers at the time they executed the extension agreement. Upon the same facts a defense of estoppel was tendered.

To prove his cause of action, the respondent offered in evidence the promissory note and the deed of trust securing it, the agreement executed by the appellants, and the trustee's deed. The deed executed by the Mattesons was received as evidence in behalf of the appellants. But the court sustained the respondent's objection to the admission of the report of an appraiser, appointed by it at the request of the appellants, fixing the value of the property at $24,000 as of the date of the sale under the trust deed. And the court also refused the appellants' offer to prove the other allegations of the proposed second amended answer.

The trial court found that the appellants guaranteed the payment of the promissory note, and that, after the application of the proceeds of the sale of the security, there remained due and unpaid the sum of $2,635.28. And it concluded that, as the appellants were sued as guarantors, they are not entitled to the benefits of section 580a of the Code of Civil Procedure. In addition, said the court, the appellants have not pleaded facts sufficient to constitute a defense of fraud, estoppel, mistake of law, or mistake of fact. But a succeeding conclusion of law is that the execution by the appellants of the extension agreement was neither induced, obtained, nor procured by any false or fraudulent representations or by reason of any mistake of law or fact, and that the respondent is entitled to recover from them the amount of the deficiency. Judgment was entered accordingly.

Mr. and Mrs. Vanderbush are the only appellants and they advance many contentions. Of principal importance is their point concerning the nature of the obligation cast upon them by the contract which they signed providing for an extension of the maturity of the Matteson's note. They claim that since by the terms of the deed in which they are named as grantees they directly promised to pay the obligation and did not "promise to answer for the debt, default or miscarriage" of the Mattesons, their liability is not that of guarantors but as principals. And if the agreement is a contract of guaranty, say the appellants, under the provisions of section 2809 of the Civil Code limiting such an obligation, they are entitled to the benefits of section 580a of the Code of Civil Procedure which authorizes a deficiency judgment for only an amount based upon the appraised value of the land securing the debt at the time of the foreclosure sale.

In reply, the respondent asserts that neither he nor his assignor was a party to the deed and a guarantor cannot alter or nullify his contract with the payee by accepting a deed from the maker of the note. And he insists that the appellants should not be allowed to present evidence as to the value of the foreclosed real estate, as his assignor was entitled to proceed against them without procuring a sale of the security. In any event, he says, the offer of proof as to value was properly refused because it did not include the statutory requirement that the appraiser had "truly, honestly and impartially appraised the property." (Code Civ. Proc., § 580a.)

By legislation enacted in 1933, a debtor may limit the amount of a deficiency judgment against him "upon an obligation for the payment of which a deed of trust or mortgage with the power of sale upon real property or any interest therein was given as security," to "the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of sale." The creditor who brings an action "shall set forth in his complaint the entire amount of the indebtedness which was secured by said deed of trust or mortgage at the time of sale, the amount for which such real property or interest therein was sold and the fair market value thereof at the date of sale and the date of such sale. . . .

Upon the application of either party made at least ten days before the time of trial the court shall, and upon its own motion the court at any time may, appoint one of the inheritance tax appraisers provided for by law to appraise the property or the interest therein sold as of the time of sale. . . . Before rendering any judgment the court shall find the fair market value of the real property, or interest therein sold, at the time of sale.'' (Code Civ. Proc., § 580a.) ■ The issue decisive of this appeal, therefore, is whether the judgment against the appellants is based ''upon an obligation for the payment of which a deed of trust . . . with power of sale upon real property . . . was given as security.''

The theory upon which the respondent relies is that the agreement entered into by the bank and the appellants is a contract of guaranty. The appellants challenge this designation of their obligation and insist that they are principals.

As to contracts of guaranty made prior to the abolishment of the distinction between sureties and guarantors (Stats. 1939, ch. 453, § 10), the courts of this state have many times declared that the obligation of the principal debtor and that of the guarantor are entirely independent obligations. (*Bank of America* v. *Hunter*, 8 Cal.2d 592, 598 [67 P.2d 99]; *Loeb* v. *Christie*, 6 Cal.2d 416, 420 [57 P.2d 1303]; *Cooke* v. *Mesmer*, 164 Cal. 332, 340 [128 P. 917]; *Adams* v. *Wallace*, 119 Cal. 67, 70, 71 [51 P. 14]; *Ingalls* v. *Bell*, 43 Cal.App.2d 356, 366, 367 [110 P.2d 1068]; *Rice Securities Co.* v. *Daggs*, 63 Cal.App. 273, 275 [218 P. 484]; *Imperial Water Co. No. 4* v. *Meserve*, 62 Cal.App. 603, 610 [217 P. 548]; *Kelley* v. *Goldschmidt*, 47 Cal.App. 38, 42 [190 P. 55]; *Withers* v. *Bousfield*, 42 Cal.App. 304, 319 [183 P. 855].) ''A mortgage or a trust deed given to secure the performance of an obligation to pay money and a guaranty given for the same purpose are each intended, of course, to subserve the same purpose, and where both are given to secure one single obligation of that character, the one operates merely as additional security to the other. But the creditor may **resort** either to the one or the other to enforce the payment of the money to secure the payment of which both were given.'' (*Kelley* v. *Goldschmidt, supra.*) As a consequence of this distinction, the courts have held that the creditor may proceed against the guarantor upon the contract of guaranty without first resorting to the trust deed or mortgage security. (*Loeb* v. *Christie supra; San Francisco etc. Seminary* v. *Mon-*

terey etc. Co., 179 Cal. 166, 172 [175 P. 693]; *Cooke* v.
*Mesmer, supra; Adams* v. *Wallace, supra; Ingalls* v. *Bell,
supra; McDonald* v. *Gravenstein Apple Growers Cooperative
Assn.*, 42 Cal.App.2d 329, 332, 333 [108 P.2d 936]; *California
Bank* v. *Kenoyer*, 2 Cal.App.2d 367, 369 [37 P.2d 836];
*Kelley* v. *Goldschmidt, supra; Murphy* v. *Hellman etc. Co.*,
43 Cal.App. 579, 586 [185 P. 485]; *Withers* v. *Bousfield,
supra.* A surety, however, could require the creditor to first
resort to the trust deed or mortgage security. [Civ. Code,
§§ 2845, 2850; and see cases collected in 23 Cal.Jur., Surety-
ship, §§ 5, 56, 57.])

This conclusion, it has been decided, does not violate the
mandate of section 2809 of the Civil Code, which provides:
"The obligations of a guarantor must be neither larger in
amount nor in other respects more burdensome than that of
the principal; and if in its terms it exceeds it, it is reducible
in proportion to the principal obligation." But the failure
of the creditor to foreclose his mortgage, said the court in
*Loeb* v. *Christie, supra,* did not cause the guarantor's obli-
gation to be any heavier or more burdensome than that of
the principal or maker of the note as both the principal
and the guarantor have the same obligation, that is, to pay
the face value of the note. The mortgage or trust deed se-
curity is merely a fund which the principal or maker of
the note makes available for the performance of his obliga-
tion to pay, and only affects the remedy against the mort-
gagor or primary debtor.

A logical distinction may be made between the cases where
the creditor proceeded against the guarantor before subject-
ing the trust deed security to the payment of the primary
obligation and one where, as in the present action, the credi-
tor has sold the security and applied the proceeds in pay-
ment of the primary obligation before suing the guarantor.
In the latter situation, since the amount for which judgment
may be entered against the principal debtor is fixed by sec-
tion 580a of the Code of Civil Procedure, to require the guar-
antor to pay a larger amount would seem to violate the statu-
tory mandate that his obligation must be neither larger in
amount nor in other respects more burdensome than that of
the principal. (Civ. Code, § 2809.) But no such distinction
was drawn by the court in *Bank of America* v. *Hunter, supra,*
where, after first selling the land under a trust deed securing

the note and applying the proceeds on the indebtedness, there yet remained due to the creditor a sum equal to the amount of the guaranty. The court there held that section 580a applies only to an action for the recovery of a deficiency judgment upon the principal obligation after sale under trust deed or mortgage, and has no application to an action based upon the independent obligation of a guarantor. Upon the authority of the Hunter case, the District Court of Appeal has held that, in an action by the creditor upon a contract of guaranty brought after exercising the power of sale in a deed of trust or mortgage securing the indebtedness, it is unnecessary to allege compliance with the provisions of section 580a of the Code of Civil Procedure in order to state a cause of action. (*Security-First National Bank* v. *Chapman*, 41 Cal.App.2d 219 [106 P.2d 431].)

If, therefore, the agreement between the bank and the appellants is a contract of guaranty, and the rule of the previous decisions is applied, the determination of the trial court in excluding evidence offered by the appellants to prove the fair market value of the property should be affirmed. On the other hand, if, as the appellants contend, they are liable as principal obligors and not as guarantors of the indebtedness, they clearly come within the provisions of section 580a of the Code of Civil Procedure and are entitled to its benefits. (See *Bank of America* v. *Hunter, supra; Hatch* v. *Security-First Nat. Bank*, 19 Cal.2d 254 [120 P.2d 869]; *Martin* v. *Becker*, 169 Cal. 301, 304-307 [146 P. 665, Ann. Cas. 1916D, 171]; *Bank of America* v. *Dennison*, 8 Cal. App.2d 173 [47 P.2d 296]; *Birkhofer* v. *Krumm*, 27 Cal.App. 2d 513 [81 P.2d 609].)

"A guaranty is a promise to answer for the debt, default, or miscarriage of another person." (Civ. Code, § 2787.) The Restatement of Contracts defines the word surety "to include everyone who is bound on an obligation, which as between himself and another person who is also bound to the obligee for the same performance, the latter obligor should discharge. Thus indorsers and guarantors are kinds of sureties." (§ 92, Comment a; see *Somers* v. *United States F. & G. Co.*, 191 Cal. 542, 543 [217 P. 746].)

Using the word surety in this broad sense, an eminent authority has said: "Whether one is a surety, therefore, depends not on his relation to the creditor but on his relation to the principal debtor. Consequently, an agreement for

sufficient consideration between principal and surety, by which the latter assumes the debt, transposes the surety into a principal and the principal into a surety." (4 Williston on Contracts [Rev. ed. 1936], § 1211, pp. 3481, 3482.) The suretyship relation, including both surety and guarantor, arises where two persons are under obligation to the same obligee, who is entitled to but one performance, as between the two who are bound, and one of them should ultimately bear the burden of the obligation. The obligor ultimately responsible for the debt is the principal and the other is the surety. (Rest. Security, § 82; Rest. Contracts, § 92 Comment a, § 180 Comment e; 4 Williston on Contracts [Rev. ed. 1936], § 1211, pp. 3482-3485.)

 In accordance with this principle, it is well established, both in California and elsewhere, that a grantee of real property subject to a mortgage or trust deed who agrees to pay such indebtedness, becomes, as to the mortgagor or trustor, the principal debtor of the mortgagee or beneficiary, and the mortgagor or trustor occupies the relation of surety. (*Braun* v. *Crew,* 183 Cal. 728, 731 [192 P. 531]; *Herd* v. *Tuohy,* 133 Cal. 55, 61, 62 [65 P. 139]; *Daniels* v. *Johnson,* 129 Cal. 415, 418 [61 P. 1107, 79 Am. St. Rep. 123]; *Tuohy* v. *Woods,* 122 Cal. 665 [55 P. 683]; *Roberts* v. *Fitzallen,* 120 Cal. 482, 484 [52 P. 818]; *Hopkins* v. *Warner,* 109 Cal. 133, 136, 137 [41 P. 868]; *Tulare County Bank* v. *Madden,* 109 Cal. 312, 314 [41 P. 1092]; *Williams* v. *Naftzger,* 103 Cal. 438, 440 [37 P. 411]; *Bank of America* v. *Dennison, supra,* p. 180; *Tompkins* v. *Powers,* 106 Cal.App. 464, 465, 466 [289 P. 685]; *Shuey* v. *Mulcrevy,* 34 Cal.App. 218, 221, 222 [166 P. 1019]; *Davis* v. *Davis,* 19 Cal.App. 797, 800 [127 P. 1051]; and see Rest., Security, § 83(c), Comment e; 4 Williston on Contracts [Rev. ed. 1936], § 1211, n. 3, p. 3482; 4 Pomeroy's Equity Jurisprudence [5th ed. 1941], § 1206, p. 620; 18 Cal. Jur., Mortgages, § 375, p. 57.) The grantee becomes a principal and controlling party to the obligation. (*Braun* v. *Crew, supra; Daniels* v. *Johnson, supra; Tuohy* v. *Woods, supra; Small* v. *C. R. Rogers Productions,* 11 Cal.App.2d 191, 194, 195 [53 P.2d 774]; *Tompkins* v. *Powers, supra; Fielding* v. *Iler,* 39 Cal.App. 559, 563 [179 P. 519].) Although the creditor may treat both the grantor and grantee as debtors, yet, after receiving knowledge of the assumption, he must recognize the relation of suretyship and respect the

rights of the surety in all of his subsequent dealings with them. (Rest., Security, § 83, Comment e; 4 Pomeroy's Equity Jurisprudence [5th ed. 1941], § 1206, p. 621, and cases cited n. 8; and see *Braun* v. *Crew, supra; Herd* v. *Tuohy, supra; Tuohy* v. *Woods, supra; Bank of America* v. *Dennison, supra.*) ▉ Under these circumstances the liability of the grantee is the indebtedness secured by the mortgage or trust deed, and the grantee may only be adjudged liable for such balance as remains unpaid after a foreclosure or trustee's sale and an application of the proceeds upon the debt and costs. (*Braun* v. *Crew, supra; Bank of America* v. *Dennison, supra; Roberts* v. *Fitzallen, supra; Shuey* v. *Mulcrevy, supra; Sherwood* v. *Lowell,* 34 Cal.App. 365, 377 [167 P. 554]; and see *Hopkins* .v. *Warner, supra; Tulare County Bank* v. *Madden, supra; Birkhofer* v. *Krumm, supra; Small* v. *C. R. Rogers Productions, supra; Fielding* v. *Iler, supra; Davis* v. *Davis, supra.*) ▉ And following the exercise by the creditor of the power of sale in such deed of trust or mortgage, in suing the grantee for the balance of the indebtedness, he must proceed in compliance with section 580a of the Code of Civil Procedure, which governs the extent of the principal debtor's liability. (See *Bank of America* v. *Dennison, supra.*)

A grantee of mortgaged property assumes the indebtedness by accepting a deed containing a provision, such as the one contained in the deed from the Mattesons to the appellants, making the transfer expressly subject to the outstanding deed of trust "which the grantees herein assume and agree to pay." (*Daniels* v. *Johnson, supra; Williams* v. *Naftzger, supra; Merchants Holding Corp. Ltd.* v. *Grey,* 6 Cal.App. 2d 682, 687 [45 P.2d 253].) And upon the principles which have been stated, considering only the assumption provision in the deed, the appellants clearly are entitled to deny, by way of answer, the allegation as to the fair market value of the property at the time of the trustee's sale and to allege a different fair market value.

▉ But the respondent, although apparently conceding his right to proceed against the appellants by virtue of the assumption clause in the deed, maintains that in this action he sued them only upon their contract of guaranty. He takes the position that a guarantor may not nullify his contract with the payee by entering into an assumption agreement with the original makers of the note.

Contrary to the respondent's contentions concerning the nature of the appellants' obligation under the agreement executed by them, the terms of the instrument and the circumstances under which it was made determine the character and extent of the undertaking. (*Sather Banking Co.* v. *Arthur R. Briggs Co.*, 138 Cal. 724, 730 [72 P. 352]; *Welsh* v. *Ebersole*, 75 Va. 651; and see 4 Williston on Contracts [Rev. ed. 1936], § 1211, p. 3485; Cormack and McCarroll, *The Distinction Between Suretyship and Guaranty in States Having the Field Code Provisions* [1937], 10 So.Cal.L.Rev. 371, 391.) The contract will be fairly construed to effect the object for which it was given and to accomplish the purpose for which it was designed (*Sather Banking Co.* v. *Briggs Co., supra*), and the use of the word "guaranty" in the instrument is not conclusive in determining its character. (*Cawston Ostrich Farm* v. *Salomon*, 72 Cal.App. 550, 558 [237 P. 808]; *Etheridge* v. *W. T. Rawleigh Co.*, 29 Ga.App. 698 [116 S.E. 903]; *Vermont Marble Co.* v. *Bayne*, 356 Ill. 127 [190 N.E. 291]; *Bank of Italy* v. *Merchants' Nat. Bank*, 197 App.Div. 150 [188 N.Y.S. 183]; affg. 113 Misc. 314 [185 N.Y.S. 43]; *Bailey Loan Co.* v. *Seward*, 9 S.D. 326, 331 [69 N.W. 58]; *Thommen* v. *Aldine Tr. Co.*, 302 Pa. 409 [153 A. 750]; *Goodrich Rubber Co.* v. *Fisch*, 141 Va. 261 [127 S.E. 187]; and see Cormack and McCarroll, *op. cit., supra*, p. 375.)

From the record it is apparent that the deed made by the makers of the note and the contract between the bank and the appellants related to one transaction, namely, the purchase of the mortgaged property and the assumption of the Mattesons' indebtedness by the appellants, conditioned upon the securing of a satisfactory extension of the note's date of maturity. The deed was executed one day prior to the date of the so-called guaranty. Both instruments admittedly were deposited in the same escrow at the payee bank. And although at the time the appellants executed the extension agreement the deed to them had not been recorded, the provisions of the agreement made by them clearly indicate knowledge by the bank that they were assuming the trust deed indebtedness and thus becoming the primary debtors on the obligation. The contract with the bank includes the appellants' promise to pay upon the principal of the Mattesons' note, the identical monthly sums upon the same day of the month as was required by the terms of the note.

Applying the test of suretyship relation to these facts, the conclusion is inescapable that, as between the Mattesons and the appellants, the obligation secured by the trust deed is the debt of the latter. The extension agreement may not therefore be construed as a contract of guaranty. ■ And as the principal obligors upon the obligation, for the payment of which the deed of trust was given as security, following the exercise of the power of sale in the deed of trust, the appellants are entitled to all benefits arising in favor of the defendant under the provisions of section 580a of the Code of Civil Procedure. The trial court therefore erred in striking from the appellants' answer the allegations of the fair market value of the real property.

■ The respondent asserts that, conceding the error of this ruling, the court's action was not prejudicial because the report of the inheritance tax appraiser, offered by the appellants to prove the fair market value of the property, was inadmissible since it contained no statement that the appraiser had "truly, honestly and impartially appraised the property" as required by section 580a of the Code of Civil Procedure. But it is unnecessary to determine the effect of this omission, for after a trial court has determined the issues of fact and has limited the introduction of evidence to those issues, its ruling should be regarded as a refusal to allow evidence upon any other one. (*Pastene* v. *Pardini,* 135 Cal. 431, 433 [67 P. 681] ; *Theatrical Enterprises, Inc.* v. *Ferron,* 119 Cal.App. 671, 677 [7 P.2d 351] ; and see 64 C.J., Trial, § 141, n. 13, p. 124.) Moreover, after the respondent's counsel objected to the admission of the appraiser's report both as being without the issues and for its failure to comply with the provisions of section 580a, the court sustained the objection, not upon the latter ground, but solely because it was outside the issues of the case. And there is nothing in the record to indicate that the appellants intended to limit their proof of the market value of the property to the report of the appraiser.

■ Each of the defenses of mutual mistake of law, fraud, and estoppel is based upon the same alleged representations by an officer of the bank. Conceding these allegations to be true, when the representations are considered together, it appears that the bank officer advised the appellants that they would be entitled to the benefits of section 580a of the Code

of Civil Procedure and that no deficiency judgment would be obtained against them if the value of the property upon foreclosure exceeded the balance due upon the note. Since such advice constituted a true statement of the law, the only mistake or fraud for which the bank may be charged with responsibility is the assertion that the property, at the time of the agreement, was worth $54,000, and that, in the event of foreclosure, the appraiser appointed by the court would appraise the property at not less than that sum. But a representation of what property will be worth at a date about two and one-half years in the future must be classified as a speculative observation and a mere statement of opinion, and as such, does not constitute a basis for a complaint of fraud or estoppel. (*Ayers* v. *Southern Pacific R. R. Co.*, 173 Cal. 74, 79 [159 P. 144, 146, L.R.A. 1917F, 949]; *Henry* v. *Continental Bldg. etc. Assn.*, 156 Cal. 667, 674 [105 P. 960]; *Owen* v. *Pomona Land & Water Co.*, 131 Cal. 530, 540 [63 P. 850, 64 P. 253]; *Wilson* v. *Rigali & Veselich*, 138 Cal.App. 760, 764 [33 P.2d 455]; *Zeh* v. *Alameda Community Hotel Corp.*, 122 Cal.App. 366, 368 [10 P.2d 190]; *Wolleson* v. *Coburn*, 63 Cal.App. 315, 323 [218 P. 479]; *Tahoe Pines Co.* v. *Newman*, 59 Cal.App. 186, 189 [210 P. 445]; *Wegerer* v. *Jordan*, 10 Cal.App. 362, 363, 365 [101 P. 1066].)

Furthermore, a vital defect in these defenses arises from the appellants' omission to allege the value of the property, both at the time of the execution of the agreement and at the date of sale under the deed of trust. For, as a defense to an action brought by the respondent to recover a deficiency judgment in conformity with the provisions of section 580a of the Code of Civil Procedure, any misrepresentation of value would be material only if the value of the property was less than $22,000, the balance due upon the note at the date of the foreclosure sale. The appellants' answer, therefore, in failing to allege the true value of the property, does not state a valid defense of fraud as it lacks facts showing that they have sustained any injury by reason of the alleged representations of the bank. And even if the court were to consider the appellants' offer of the appraiser's report of value to cure this defect, since it fixed the value of the property at $24,000, the appellants have suffered no damage. Accordingly, the action of the trial court in granting the respondent's motion to strike these defenses and in

denying the appellants' motion for leave to file a second amended answer, considered in conjunction with the appellants' offer of proof, was not prejudicial.

These conclusions make it unnecessary to consider other points presented by the appellants.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., Traynor, J., and Spence, J. pro tem., concurred.

Respondent's petition for a rehearing was denied January 21, 1943.